Sophia Niman, Plaintiff-Appellant, v. Pecatonica Live-
stock Exchange, Inc., Defendant-Appellee.

Gen. No. 11,019.

Second District.
March 28, 1957.
Released for publication April 15, 1957.

Pedderson, Menzimer & Conde, of Rockford, for appellant.

Alex J. Victor, of Rockford, for appellee.

JUSTICE EOVALDI delivered the opinion of the court.

This action was brought to recover damages for personal injuries sustained by plaintiff due to the alleged negligence of the defendant. The jury brought in a verdict for the defendant upon which the court entered the judgment from which this appeal is taken.

The plaintiff's theory of the case is that the verdict is against the manifest weight of the evidence; that defendant was erroneously allowed by the court to deny acts of its lawful agents; and the court erred in refusing to give plaintiff's instruction number nine to the jury.

The complaint charges that the

"defendant failed and neglected to maintain a cover over said cess pool of sufficient strength to support the weight of the crushed rock and the soil over the same, and the weight of persons who might step thereon, and that defendant negligently and carelessly allowed said cover to become decayed and in a state of disrepair so that it did not support the weight of the plaintiff, and that defendant failed to provide any fencing or other protection around said cess pool, and that the defendant failed to give any warning to the plaintiff or other persons of the presence of said cess pool underneath the ground, and that as a proximate

145

and direct result of the defendant's negligence as aforesaid, plaintiff fell into said cess pool and was injured as aforesaid."

For a long time prior to November 11, 1953, plaintiff had been employed as a cattle buyer by the Kosher Packing Company of Rockford, Illinois, which was owned by her and her family. The defendant corporation for a long time had been in the business of selling livestock and other items at auction and for that purpose had leased a sale barn and surrounding parking area, all located near Pecatonica, Illinois. The sale barn had, in addition to the auction ring, a combination office and lunch room on the south side of the barn. A door led from this room outdoors. There were parking areas to the north, south and west of the barn composed of dirt and crushed rock.

As part of plaintiff's duties, she had attended the sales held each week at defendant's sale barn, and on November 11, 1953 she attended the sale, and made numerous purchases of cattle. When she had completed her purchases, she went with her son, Norman, from the auction ring to the room containing the office and luncheonette in order to get her invoices. When she had completed this transaction with defendant's employees, she started out the door, following her son who had come to take her home in his car, and they were on their way to his car in the parking area. Plaintiff turned to the west on a beaten path and walked two or three feet when she fell into a cesspool causing her injuries. John McDougal, vice-president of the defendant corporation, called a doctor and plaintiff was taken to the hospital.

An examination of the hole she fell into revealed that it was about twenty-four inches square. The sides were out of dirt, and the top was of boards about an inch or an inch and a quarter thick. One of the boards was rotted and had broken letting plaintiff fall into the hole. A pipe protruded into the hole about twenty-

146

eight to thirty inches below the ground. The pipe went out of the sink and into the wall near the floor. The sink was directly in front of the hole and about two feet away.

In 1945 Albert Peterson built the sale barn for that purpose. He leased it to the defendant and defendant has been his first and only tenant. In 1947 Peterson was also secretary of the defendant corporation. Then, and during the time defendant has been in business, the kitchen has been part of the building. In 1947 Peterson installed the cesspool for the kitchen. He dug it about four feet by four feet and about three feet deep to the stone, and installed the pipe and the boards covering the hole. At that time John H. Dieken was president of the defendant, and still is.

Appellant argues that the tenant or occupant of leased premises and not the owner thereof is responsible for injuries resulting from the defective condition of the demised premises; that lack of actual knowledge of corporation officers of defective or dangerous conditions is no defense upon a suit by an invitee for injuries received on premises leased by the corporation; and that knowledge of an officer and director of a corporation is actual notice to the corporation itself.

Appellee contends that a lessor of land, who conceals or fails to disclose to his lessee any unnatural or artificial condition involving unreasonable risk of bodily harm to persons upon the land, is subject to liability for such harm caused thereby to persons on the land with the consent of the lessee; that a tenant must have actual or constructive notice of defective or dangerous conditions to be held liable in a suit by an invitee for injuries received on premises leased by the tenant; and that a corporation is not chargeable with knowledge or notice of facts learned by an officer while he is acting solely in his own private interest.

Five cases are relied on by appellant in support of her contention that lack of actual knowledge of corpo-

ration officers of defective or dangerous conditions is no defense upon a suit by an invitee for injuries received on premises leased by the corporation. In three of the cases—Blue v. St. Clair Country Club, 7 Ill.2d 359, Storment v. Swift & Co., 5 Ill.App.2d 417, and Thomas v. Vannucci, 185 Ill. App. 414—the tenant had actual knowledge of the defects complained of. In the fourth case, Swanson v. S. S. Kresge Co., 302 Ill. App. 455, the court stated at 466 "In our judgment the proof as to the defective condition of the step at the time of the accident to plaintiff showed a condition of disrepair that would warrant a jury in finding, especially in the absence of any proof by defendant, that the defective condition had existed for a space of time sufficient to charge defendant with constructive notice of it. In other words, plaintiff's evidence was sufficient to make out a prima facie case." In the other case cited by appellant, Reichmann v. Robertson's, Inc., 264 Ill. App. 537, it was clear that the injury to plaintiff was due to the negligence of defendant in allowing a ladder or stairway to be in an unsafe and unattached condition at the time plaintiff attempted to use it in coming down from a loft to which defendant's salesman had taken him to show him feed to be used at his farm. This was the first time the customer had used the ladder or stairway.

In the instant case plaintiff testified that she had been on the premises on a number of occasions prior to the date of the accident. On that day she walked out the south door, looking ahead of her and saw nothing in the nature of a hole or obstruction. The ground on which she walked suddenly gave way. Her son testified to the same effect; that it was daylight; that he walked out ahead of her, and observed the ground as he walked along, and that he saw a beaten, dirt path, no indication of any hole; and that he went across approximately the same place his mother had, and that he had

gone out there on a number of occasions for five or six years and he believed that he had walked the same path on a number of occasions before, and that his mother had been out there a number of times.

Albert Peterson, the landlord, testified for the plaintiff that he himself built the cesspool a number of years before the accident, and that the cesspool was dug and constructed by him as landlord and not as agent or officer of the defendant. He testified further that his wife was operating the lunch counter, that he carried out the dish water in a pail, and that he constructed the cesspool to drain off the dish water and thus relieve himself from carrying out the water. He further testified that he consulted with no one about the construction, and informed no one of its construction or existence, and that he didn't tell anybody in the corporation at the time that he was building it.

John H. Dieken and John McDougal, two officers of the corporation who were actually engaged in the operation of the sale barn and premises surrounding the barn, testified that they did not know of the existence of the drainage pit or cesspool and that there was nothing to indicate that the ground over the cesspool was sinking or about to cave in, and that they never saw any lowering of the ground or any depression of any kind.

■ ■ Plaintiff contends that knowledge of an officer and director of a corporation is actual notice to the corporation itself. This is the rule where an officer or director receives notice while acting in the course of his employment and within the scope of his authority. However, the evidence here is not sufficient to bring this case under that rule of law. The law is well settled that a corporation is not chargeable with knowledge or notice of facts learned by an officer while he is acting solely in his own private interest. Allmon v. Salem Building Ass'n, 275 Ill. 336 at page 344; Home

149

Savings and State Bank v. Peoria Agricultural and Trotting Society, 206 Ill. 9 at pages 13, 14.

Appellant in her post-trial motion charges that the court erred in refusing plaintiff's instruction number nine, which reads as follows: "The court instructs the jury that knowledge of any officer of a corporation is binding on the corporation." This instruction was in the abstract and did not contain a correct proposition of law as applicable to this case and the court did not err in its refusal.

In the case of Elbers v. Standard Oil Co., 331 Ill. App. 207, the court stated at page 226:

"A lessor of land, who conceals or fails to disclose to his lessee any unnatural or artificial condition involving unreasonable risk of bodily harm to persons upon the land, is subject to liability for such harm caused thereby to the lessee and others on the land with the consent of the lessee or a sublessee after the lessee has taken possession, if (a) the lessee does not know of the condition or the risk involved therein, and (b) the lessor knows of the condition and realizes the risk involved therein and has reason to believe that the lessee will not discover the condition or realize the risk. Restatement of the Law of Torts, vol. 2, sec. 358."

The fact of the existence of the cesspool was not known by the defendant, and until the cesspool caved in, there was no evidence of any kind to indicate that it was in a defective condition. The landlord built the cesspool and failed to notify the defendant, but seeks, by his testimony on behalf of the plaintiff, to shoulder his responsibility elsewhere. On cross examination he stated that he had never had any trouble with running water coming out of the sink; it never backed up; drinking water was all that went into the cesspool; he never had to make any repairs; he saw no indication that it was going to collapse. "Just dug the hole and I put four posts in each corner, and then I laid a plank

150

in on the sides and inside the posts and covered it with a plank. . . . Then I covered it with dirt on top, it was all covered up. There was five or six inches of dirt and gravel on top; mostly gravel. We had covered the whole driveway with gravel. I guess it had worked over there, crushed rock. Looking at the parking lot, you couldn't tell where the cess pool was. Unless someone knew, you wouldn't know it was in. There was no way of telling unless you actually knew it was there."

 It is not the province of this court to substitute its judgment for that of the jury, or to upset the verdict even if it were to reach a contrary conclusion, for that would be invading the constitutional prerogative of the jury. Bliss v. Knapp, 331 Ill. App. 45, 50. To be against the "manifest weight of the evidence" requires that an opposite conclusion be clearly evident. Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267, 271; Schneiderman v. Interstate Transit Lines, Inc., 331 Ill. App. 143, 147. We cannot say that the judgment is against the manifest weight of the evidence in this case. For the reasons stated, the judgment is affirmed.

Judgment affirmed.

DOVE, P. J. and CROW, J., concur.