Virgil Edward Palmer, Plaintiff-Appellant, v. James M. Poynter, Eugene Shipley, and Oscar Anderson, doing business as Anderson Construction Company, Defendants-Appellees.

Gen. No. 59-O-21.

Fourth District.

. January 21, 1960.

Released for publication February 9, 1960.

McClory, Bairstow, and Anderson, of Waukegan, Taylor and Schniederjon, of Effingham (David K. Anderson, Frank H. Schniederjon, and Peter J. Nordigian, of counsel) for plaintiff-appellant.

Smith, McCollum, and Riggle, of Flora, for defendant-appellee.

JUSTICE HOFFMAN delivered the opinion of the court.

This is a suit for personal injuries arising out of an automobile collision. Plaintiff originally brought his suit against three persons, James M. Poynter, Eugene Shipley and Oscar Anderson. After jury verdicts for all defendants and the denial by the trial court of plaintiff's post-trial motions, this appeal was taken to this court against all defendants. Subsequently, in this court, the appeals against Shipley and Anderson were dismissed by stipulation. Our consideration of the matter, therefore, will only pertain to the judgment in favor of the defendant Poynter.

The plaintiff rests his appeal on three points: (1) that a verdict should have been directed in his favor against the defendant Poynter; (2) that the verdict is against the manifest weight of the evidence; and, (3) that the verdict was coerced. To properly pass upon these points, there must be a clear understanding of the facts.

On August 10, 1955, near 5:30 in the afternoon, Oscar Anderson was engaged in moving a large crane on a low-boy over U. S. Route 45 in a southerly direction approximately 12 miles south of Effingham. The low-boy was driven by Eugene Shipley, an Anderson employee, and riding with him was Lionel Anderson. Another employee, Donald Griffin, drove a car some several hundred feet ahead of the low-boy. His responsibility was to give warning to oncoming traffic of the approach of the low-boy and crane. Oscar Anderson, himself, operated a vehicle several hundred feet to the rear of the low-boy for the purpose of warning traffic from the north. Anderson had a permit to move the equipment. The highway at this place was improved, 18 feet wide with a 2 foot gutter on either side. There were no shoulders. The low-boy and crane measured 11 feet, 2 inches wide, necessitating the use of more than half the road. In the vicinity of the accident, the route, as it goes south, proceeds up a hill after it first passes over two small bridges. It was 800 feet from the south bridge to the crest of the hill. Coming down the hill on the east side was the two foot gutter referred to. It came to about 177 feet from the south bridge and then went off into the ravine. The two bridges were 340 feet apart and, while the equipment was being moved across either bridge, it would not permit passing of another vehicle.

The sequence of events leading up to the collision are not too much disputed. First, the driver of the low-boy stopped 200 feet north of the north bridge while the lead car went ahead to flag traffic. A car driven by one Zelma Stephens, who was not a party to the suit, was flagged down. She stopped about 175 feet south of the south bridge. Then the plaintiff came along from the south. He was flagged down and stopped 15 to 20 feet back of Zelma Stephens. Griffin,

the lead man, then motioned the low-boy to come on over the bridge and up the hill. The lead car pulled on ahead and stopped some 100 to 150 feet below the crest of the hill. He didn't go all the way up the hill but remained below the crest. Shipley, driving the low-boy, came through the two bridges and then, by riding in the gutter on the west, was able to pass Zelma Stephens and the plaintiff.

As this was going on, defendant Poynter, driving north came up over the hill at a speed variously estimated at 45 to 60 miles per hour. He observed the lead car and saw Griffin waving a red flag to warn him. He may have slowed somewhat when he saw the low-boy and crane which by now was coming up the hill, having passed the plaintiff's vehicle. He stated that he saw the plaintiff at about the time he was passing the low-boy and crane. Exactly where this occurred, in relation to the location of the plaintiff, is in dispute. However, defendant Poynter left skid marks on the pavement which measured 174 feet. The pavement was wet, and the skidding occurred with the right wheel of Poynter's car in the gutter on the east side of the road. Poynter's car struck plaintiff's car, and plaintiff's car then went forward and struck the Stephens car in front of him.

 The rules applicable to plaintiff's first two points have been stated many times. Upon a motion made by a plaintiff for a directed verdict, the court must consider all of the evidence and if there is any evidence, standing alone, together with every reasonable inference therefrom, which tends to prove the defendant's position in the case, then the motion should be denied. If there is a conflict in the evidence on any material matter that necessitates weighing of the evidence or judging of the credibility of witnesses, and if it appears that reasonable minds might come to different conclusions, a verdict should never be directed.

71

Dowler v. New York, C. & St. L. R. Co., 5 Ill.2d 125, 125 N.E.2d 41; Lindroth v. Walgreen Co., 407 Ill. 121, 94 N.E.2d 847; Bartolucci v. Falleti, 382 Ill. 168, 46 N.E.2d 980. With regard to the granting of a new trial because the verdict is against the manifest weight of the evidence, it is the rule that this court cannot substitute its judgment for the judgment of the jury unless an opposite conclusion is clearly evident. Arboit v. Gateway Transp. Co., 15 Ill.App.2d 500, 507, 146 N.E.2d 582, 586. Reasonable inferences may be drawn by a jury, and this court cannot set a verdict aside merely because a jury could have drawn different inferences or because we might have reached a different conclusion. Niman v. Pecatonica Livestock Exchange, Inc., 13 Ill.App.2d 144, 151, 141 N.E.2d 327, 331.

█ With these principles in mind, we have carefully reviewed the record in this case and considered the evidence therein contained. Especially have we studied the nine photographs of the scene of the collision which were admitted by stipulation. Testimony as to defendant Poynter's speed as he came over the hill ranged from 45 to 60 miles per hour. None of these speeds were shown to have been excessive. Moreover, according to the photographs, one cannot see the road below from the top of the hill. Furthermore, there was no person or thing at the top of the hill to warn Poynter or any other motorist approaching from the south of any danger below. An examination of the photographs clearly reveals to us that the jury might well have found Poynter to have been in a helpless condition as he came over the crown of the hill, due to the failure of the dismissed defendants to properly warn him of the danger below. This was sufficient, in our view, based as it must be on the record before us, to require a weighing of the evidence concerning a conclusion upon which reasonable minds might differ and, accordingly, to justify the trial

72

court's ruling on the motion for a directed verdict. Consequently, our hands are stayed from ordering a new trial.

The remaining point upon which plaintiff relies is that the jury's verdict was coerced. The substance of this is based solely upon two jurors' affidavits. Jurors cannot be heard to impeach their verdict. This has consistently been the law from Forester v. Guard, Siddell & Co., Breese (1 Ill.) 74, to the recent case of Smith v. Illinois Valley Ice Cream Co., 20 Ill.App.2d 312, 156 N.E.2d 361. If it were otherwise, litigation would become interminable. When we ignore the affidavits of the jurors in this case, as we must, we find there remains nothing in the record to indicate any coercion of this verdict.

We conclude, therefore, that the judgment of the trial court must be affirmed.

Judgment affirmed.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.