Angus B. Ferdinand, Jr., Plaintiff-Appellant, v.
William D. Lindgren, Defendant-Appellee.

Gen. No. 11,512.

Second District, First Division.
September 12, 1961.

Knoblock & Ott, of Peoria, for appellant.

Kavanagh, Bond, Scully, Sudow and White, of
Peoria, for appellee.

DOVE, J.

Wm. D. Lindgren, the defendant, a young man 21
years of age, was driving his father's 1950 Buick
automobile in a northerly direction on University
Avenue in the City of Peoria between 4:30 and 5:00
o'clock on Sunday afternoon, January 13, 1957. Main
Street runs in an easterly and westerly direction, and
intersects University Avenue. At the intersection
there are the customary electric signal lights. A block
south of Main Street, also running in an easterly and
westerly direction is Windom Street and at the inter-
section of University Avenue and Windom Street
there are stop signs on Windom Street.

In obedience to the traffic signal at the intersection of University Avenue and Main Street, plaintiff, Angus B. Ferdinand, Jr. who, at this time, was also proceeding north on University Avenue in his Ford Sedan, stopped his car and was waiting for the green signal. While so stopped the front bumper of the car defendant was driving came in contact with the rear bumper of plaintiff's car.

On May 15, 1958 the instant complaint was filed by Angus B. Ferdinand, Jr. to recover from the defendant $35,000 damages he alleged he sustained as a result of this impact. The issues made by the pleadings were submitted to a jury resulting in a verdict finding the defendant not guilty. An appropriate judgment was rendered on this verdict and plaintiff appeals.

Counsel for appellant insists that as a matter of law plaintiff is entitled to recover; that the verdict of the jury is against the manifest weight of the evidence and therefore the judgment of the trial court should be reversed and the cause remanded for a new trial solely upon the question of damages.

Other than Dr. John C. Canterbury whom plaintiff consulted the following day, at his office in Peoria,. the only persons who testified were the plaintiff and the defendant. The plaintiff stated that he had resided in Peoria thirteen years, was married and at the time of the trial was 46 years of age. He was vice-president and shop foreman of the Hill-Kasteen Company at the time of the occurrence in question and at the time of the trial and had been an employee of this company for 22 years. He stated that he had frequently driven on University Avenue and was familiar with the intersection of that Avenue and Main Street; that he had taken his wife, daughter and mother-in-law to a picture show on the afternoon of January 13, 1957 and was returning to his home; that as he proceeded north on University Avenue he observed the traffic signal at the intersection of that Avenue with

134

Main Street and stopped his car. As abstracted by his counsel plaintiff then testified: "I was stopped there (at the intersection) about five seconds when I received a blow from the rear. I saw black for a short period, my hat flew off my head and I had a severe pain across the lower part of the neck. I was alone at the time. I later discovered my hat on the rear window ledge of the back seat. My car was a two-seated, two door sedan. The light was still red when I was struck. The car was moved about six feet by the impact. I was bent over a little and as soon as I got out of the car I saw what happened. I could still walk and operate alright. I saw the Buick in back of me and there was space between us. The street was icy at this intersection. I had a conversation with Mr. Lindgren and he was very nice. Then I went home suffering with the pain and laid down. The next day I went to see Dr. Canterbury who testified here, at his office in the Jefferson Building. I then had severe pain in the lower part of the neck. At that office call Dr. Canterbury examined me and set up an x-ray appointment at St. Francis Hospital. He gave me pain pills and I switched to aspirin. I also had heat and rest. The next time I saw him was about a week later and this was at his office. He examined me, and again said just to wait and take another series of x-rays and told me to take pills and use heat."

Plaintiff further testified that during 1958 and 1959 he lost many days work but kept no record of how many; that his salary was paid during the time he did not work; that the only damage to his car was to the bumper and he straightened it with a chain by using a telephone pole; that he had no financial loss except $62 being the amount he paid Dr. Canterbury $21, and $41 which he paid St. Francis Hospital for x-rays.

The defendant testified that he was 24 years of age at the time of the trial and a teacher in Community High School at Bartonville; that upon the afternoon

135

in question he left the Bradley campus, was travelling alone and drove east on Windom Street a block south of Main Street; that he stopped at the intersection of Windom Street and University Avenue and then turned north into University Avenue and was proceeding north on that avenue; that the visibility was good, the pavement was level, his windshield clear, his vision unobstructed and no other vehicles were between his car and the car driven by the plaintiff; that Windom Street as well as University Avenue were icy; that he was aware of the condition of the streets; that his car was not equipped with chains and that it was not snowing or sleeting at the time of the occurrence and that he had no difficulty stopping his car at the intersection of Windom Street and University Avenue.

As abstracted defendant further testified: "After making the left turn to go north on University Avenue from Windom I saw plaintiff's car in front of me. When first seen it was stopped or stopping at the intersection of Main and North University. I was then about four car lengths away from him. At that point I began applying my brakes. The brakes were no good. The car simply did not stop. The wheels had stopped. The brakes weren't holding but the wheels had stopped. From the time I applied my brakes, I was unable to stop until my car came into contact with the Ferdinand car. I don't actually remember but I believe my speed, when I started to apply the brakes was between 5 and 10 miles per hour. I had come from a complete stop at the previous intersection. I couldn't tell exactly how far the cars moved after the impact but I believe mine stopped immediately. There was a space for me to move between my car and his. The two automobiles were not completely together after the impact. After the collision I got out of the car and I believe Mr. Ferdinand was alone. We had a conversation. I do not recall Mr. Ferdinand

stating or indicating that he was injured. It is possible he may have said something about that. We remained there approximately 5 minutes, if that long. We both drove away and I went home to East Peoria."

Dr. Canterbury testified that when he first saw plaintiff at his office on January 14, 1957 he diagnosed plaintiff's injury as a so-called "whip-lash injury to the neck." The doctor recommended that plaintiff apply heat to the neck and take some pain pills and suggested that an x-ray be taken and on that day an x-ray of the cervical spine was taken which the doctor testified disclosed a spurring which indicated an arthritic condition which could not have been the result of this occurrence. The plaintiff again called at Dr. Canterbury's office on January 21, 1957 and the doctor again suggested the application of heat to the neck. Plaintiff next saw the doctor on June 18, 1957 and at that time another x-ray of the cervical spine was taken and the doctor testified that the condition there shown which was causing plaintiff pain was present before the instant occurrence. On June 24, 1957 an x-ray of plaintiff's neck was taken and it was the doctor's opinion that there was no particular difference between the narrowing of the joint spaces between January and June, 1957.

Counsel for appellant states that the factual situation in Ceeder v. Kowach, 17 Ill App2d 202, 149 NE2d 766 is identical with the facts disclosed by this record. In the Ceeder case it appeared that the plaintiff was driving his car in a northeasterly direction on Ogden Avenue in Chicago about 3:15 in the afternoon. The car driven by defendant was proceeding directly behind plaintiff's car in the same lane of traffic 10 or 15 feet to the rear of plaintiff's car. Both cars were travelling at a speed of 10 to 15 miles per hour. At the intersection of Kostner Avenue and Ogden Avenue plaintiff stopped his car for a red light and defend-

ant's car skidded on the wet pavement and a collision resulted. The court held that under the circumstances defendant was guilty of negligence as a matter of law. The court stated that defendant should have foreseen that plaintiff would probably have to stop for a red light; that traffic on adjoining lanes would prevent turning out of the way of plaintiff's car; that he would have to apply his brakes; that his car would probably skid on the wet pavement if the brakes were applied too suddenly and that if he were going too fast or was not far enough behind plaintiff's car he would collide with it.

The circumstances in the instant case are different. Here defendant's brakes and steering mechanism were in good condition. He knew the condition of the highway and had had no trouble in bringing his car to a stop on the icy pavement just a block from the scene of the occurrence in question, that is, at the intersection of Windom Street and University Avenue. Here plaintiff was only travelling between 5 and 10 miles per hour and going at that speed applied his brakes when he was between 1/3 and 1/2 block from the rear end of plaintiff's car. Under these circumstances the jury might well have found defendant to have been in a helpless condition just as the jury found in the case of Palmer v. Poynter, 24 Ill App2d 68 at p 72, 163 NE2d 851.

In the instant case the jury was instructed, at the request of the plaintiff that "negligence is the failure to do something which an ordinarily careful person would do, or the doing of something which an ordinarily careful person would not do, under the same or similar circumstances." The jury having considered all the facts and circumstances in evidence found that the defendant was not negligent. Under the evidence the jury may well have concluded that the defendant in placing himself in the position he found himself did

only what an ordinarily careful person would do under the circumstances.

The facts in Kocour v. Mills, 23 Ill App2d 305, 162 NE2d 497, also cited and relied upon by appellant are not analogous to the facts in the instant case. There the day was clear and bright, the pavement dry and the defendant was proceeding toward the intersection driving about 35 miles per hour and did not see plaintiff's car until just before he hit it. What we then said was that defendant was driving his car either too fast just before the collision or was following too close behind the automobile which was in his traffic lane. There defendant knew he could not stop in the space which intervened between the front of his car and the rear of the car in front of him. Here defendant had every reason to believe he could.

In Piggott v. Newman, 334 Ill App 75, 78 NE2d 328 it appeared that defendant's car was unable to be stopped at an intersection and plaintiff's car was damaged as a result of being hit by defendant's car which skidded into it because of the icy condition of the street. The appellate court reversed a judgment for the plaintiff because of the error of the trial court in refusing an unavoidable accident instruction tendered by the defendant. The court said that there was evidence in the record supporting the theory of unavoidable accident.

In Bradley v. Thomas M. Madden Co., 333 Ill App 153, 76 NE2d 797 it appeared that plaintiff was driving an empty hearse in an easterly direction on the south half of a four lane pavement proceeding at a speed of about 20 miles per hour. At the same time, shortly before noon, defendant's pickup truck was being driven in a westerly direction on the north half of the highway at about the same rate of speed. The "pavement was covered with glare ice or was icy in spots." The driver of defendant's truck had both

hands on the steering wheel, his foot was on the accelerator and he was looking straight ahead. The rear end of his truck started to skid to the left or south. The driver turned his front wheels to the left and then applied his brakes and the pickup truck started to skid. Plaintiff thought the two vehicles were about 75 feet apart at that time. Defendant's truck continued to skid and collided with the hearse which was proceeding in its proper lane of traffic. In reversing the judgment of the trial court for the plaintiff and remanding the case with directions to enter judgment for the defendant, the appellate court said that the defendant did not have the absolute duty of keeping his truck on the north half of the highway regardless of whether its skidding over to the south side was without fault on his part.

In "Preparing and Trying Cases in Illinois," Vol 2, Chap 60 is an article on skidding and negligence prepared by Honorable Hal M. Stone of the McLean County Bar. Among the cases cited and referred to by the author are the Piggott and Bradley cases. This author concludes that the mere fact that an automobile has skidded is not indicative of actionable negligence; that proof that the driver of the car, at the time the car skidded, was proceeding at a reasonable speed, and that he had reasonable control of the car under all the circumstances, may, with other facts appearing in evidence, convince a jury that the collision occurred without fault on the part of the defendant.

The instant case was tried by the plaintiff and by the defendant on the theory that the question of liability was based upon defendant's negligence. The jury found, under all the evidence that defendant was not guilty and whether he was or was not, was a question of fact to be determined by the jury and this court cannot say, as a matter of law, that the jury was not warranted in so finding.

This record discloses that plaintiff suffered no loss of income as a result of this accident. He did expend $21 for the examinations made by Dr. Canterbury and $41 for x-ray pictures which were taken in January and June, 1957. All that these pictures disclosed, however, was an arthritic condition in no way related to the occurrence in question. The photograph of plaintiff's car, offered in evidence by the defendant, discloses that the dent in the car's rear bumper was trivial and no recovery was sought therefor by the plaintiff.

No complaint is made with reference to the admission or rejection of evidence. It is not insisted that the jury was improperly instructed as to the law or that anything transpired upon the trial of the case which was in any way prejudicial to the rights of the plaintiff. At no stage of the trial did plaintiff make any motion for a directed verdict on the question of liability and in his post trial motion he insisted only that defendant's negligence was the proximate cause of plaintiff's injuries and that the verdict was contrary to the manifest weight of the evidence.

The evidence found in this record sustains the verdict of the jury and the judgment rendered thereon and that judgment is, therefore, affirmed.

Judgment affirmed.

SMITH, P. J. and McNEAL, J., concur.