**Oscar T. Houchins, Appellant, v. Shirley Cocci, Appellee.**

**Gen. No. 49,027.**

First District, First Division.

October 28, 1963.

Rehearing denied November 15, 1963.

Samuel E. Bublick and Robert A. Sprecher, both of Chicago (Nat P. Ozmon, of counsel), for appellant.

Hubbard, Hubbard, O'Brien & Hall, all of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action, arising out of a collision when plaintiff's standing automobile was struck in the rear by defendant's automobile. Plain-

433

tiff appeals from a not guilty verdict and judgment for defendant, entered after an extended and hotly contested trial, primarily devoted to the issue of the cause and extent of plaintiff's laminectomy and spinal fusion.

Plaintiff's principal contentions are that the trial court erred (1) in denying his motion to direct a verdict for the plaintiff on the issue of liability; and (2) in committing numerous trial errors, which included erroneous instructions, errors in the admission and nonadmission of exhibits, prejudicial evidence and comments regarding plaintiff's prior injuries, and prejudicial conduct and remarks of the trial judge. We believe the decisive question is whether the court should have directed a verdict for the plaintiff on the issue of liability.

On motion by plaintiff to direct a verdict against defendant, the trial court must view all of the evidence in its aspects most favorable to defendant, together with all reasonable inferences to be drawn therefrom. (34 ILP Trial § 132.) "It is proper for a court to direct a verdict for a plaintiff on the issue of liability at the close of all the evidence when the plaintiff has made out a case and there is no evidence contradicting or tending to contradict the plaintiff's evidence on that issue." Ryan v. Goldblatt Bros., Inc., 24 Ill App2d 239, 242, 164 NE2d 280 (1960).

On Sunday afternoon, December 6, 1959, plaintiff, Oscar T. Houchins, was driving his automobile northbound on Chicago Road in South Chicago Heights. He was on his way to purchase a Christmas tree at a lot on the west side of Chicago Road immediately north of the intersection at 30th Street. He had passed the intersection and was stopped in the left lane of the two northbound lanes, about 50 to 100 feet north of the intersection, waiting to make a left-hand turn into the Christmas tree lot (a closed Kiddyland), when his

automobile was struck in the rear by an automobile driven by defendant, Shirley Cocci, who was also driving north on Chicago Road in the same lane. Both cars were damaged. Defendant testified her car was a total wreck, and it had to be towed away.

On January 27, 1960, surgery was performed on plaintiff to remove a spinal disc. This operation included removal of a small portion of the spinal column and the removal of a 6-inch piece of bone out of plaintiff's leg, which was grafted into the spine—a laminectomy and a spinal fusion. At the time of the occurrence, plaintiff was 27 years of age. It was admitted he had previously injured his back on June 11, 1959, and again on September 29, 1959.

As to the facts of the occurrence, plaintiff testified that he put on his left directional light and slowed down as he got in the vicinity of the intersection of 30th Street and Chicago Road. He saw no cars to the rear of his car and began slowing down and came to a stop 50 to 100 feet north of the intersection. He remained at a standstill for approximately 25 or 30 seconds, during which time his directional signal was on. He looked into the rear view mirror immediately before the impact and saw a car about one foot away, and then felt the impact. After the collision he spoke to the driver of the other car, the defendant, who was hysterical and kept repeating, "I'm sorry. I didn't see you." Plaintiff further testified that his car was in good mechanical condition; that the weather was cold and clear, and there was no moisture on the pavement.

Defendant testified that she was traveling northbound on Chicago Road, with her four and one-half month old daughter in a bassinet on the seat beside her. At 30th and Chicago Road "[I] hit the rear end of an automobile operated by Mr. Houchins." Prior to reaching 30th Street, she was driving approximately 25 miles an hour, and "I slowed down a bit at the

intersection." She further testified she saw no left-turn signal on plaintiff's car and no light indicating that plaintiff's car was stopping prior to the collision. On cross-examination she stated: "I believe at my deposition I said that I was going at the same speed when I crossed the intersection—about 25 miles. When I first saw the plaintiff's car, it was stopped. I most emphatically did not see a left-turn signal indicator. I believe upon my deposition I said I didn't remember whether he had his turn signal on. . . . It was a clear day. The pavement was dry. I could see all right. The windshields were clear. Nothing interfered with my vision. My brakes were in good condition. . . . Plaintiff's car was about 20 feet in front of me when I first saw him."

A witness for defendant, an investigating officer of the South Chicago Heights police force, testified that when he arrived at the scene of the collision, the two cars were in the inner lane of the northbound traffic. He spoke to defendant, and she told him she did not know exactly how the collision happened—she glanced over at the baby for a second and saw the car stopped in the road where the other driver was making a left-hand turn, and she tried to stop before striking plaintiff's car.

A witness for plaintiff testified that he lived in and operated a locksmith shop on the southeast corner of 30th Street and Chicago Road and witnessed the occurrence. He first noticed a car pull up and stop and turn on the blinker indicating a left turn, while facing north on Chicago Road. That car was about 115 or 120 feet from the witness and 5 to 15 feet south of the entrance to the tree lot. The car was facing north on Chicago Road, next to the center line, waiting for southbound traffic to pass, with its blinker on for a minute or a minute and a half. He saw another car

going north in the center lane, which did not appear to slow up and collided with the stopped car.

In summary, defendant basically contends that "plaintiff was clearly negligent in stopping in the middle of the road without warning and without reason," and "defendant was not negligent since she did not expect someone to stop in the middle of the road where there was no reason. She took her eyes off the road only momentarily to look at her baby. Plaintiff stopped abruptly in her lane of travel. She was unable to stop completely before bumping him."

██ On the issue of liability, in considering "all of the evidence in its aspect most favorable to the defendant," we fail to find "any evidence standing alone and considered to be true, together with the inferences that may legitimately be drawn therefrom which fairly tends to support the defendant's defense," that plaintiff stopped "suddenly in the middle of the road without warning and without reason." (Johnson v. Skau, 33 Ill App2d 280, 179 NE2d 40 (1962).) Defendant's evidence, standing alone, shows only that she was driving 25 miles an hour, on a clear day, on a dry pavement, with nothing interfering with her vision, and saw plaintiff's stopped car—20 feet in front of her. She did not see any left-turn or stop lights on plaintiff's car. This evidence contains nothing from which it can be inferred that plaintiff was negligent or stopped abruptly, or that defendant was justified in having failed to see plaintiff's car until she was within 20 feet of it. Defendant had a duty to see other cars traveling ahead of her in her traffic lane and to be sufficiently alert to have had her car under proper control so that she could have stopped it without running into other traffic lawfully on the highway and lawfully stopped waiting to make a left

turn. Kocour v. Mills, 23 Ill App2d 305, 162 NE2d 497 (1959).

There is no evidence in the record to contradict or tend to contradict plaintiff's evidence that he was stopped for a period of time, in his proper lane, waiting to make a left turn, with nothing to obstruct the view of any car coming from plaintiff's rear in the same lane. We hold there was a total failure by defendant to prove due care on her part.

Defendant also contends that the trial court did not err in refusing to direct a verdict for plaintiff on the issue of liability, because the plaintiff failed to prove any damages whatever. Defendant argues that a necessary element of plaintiff's case was proof of actual loss or damages. We have examined Jeffrey v. Chicago Transit Authority, 37 Ill App2d 327, 185 NE2d 384 (1962), cited as authority for this contention. That case arose from a rear end automobile collision. The jury found in favor of the plaintiffs but awarded them no damages. In its opinion, this court said (p 336):

> "We believe the rule that there must be at least nominal damages in negligence cases is unrealistic. The damage awarded should be for the harm suffered not for the unintentional tort committed. We hold if a defendant's liability is established, a plaintiff must prove actual damage before he can recover."

In the instant case, plaintiff offered no evidence of the amount of the damage to his car, and defendant argues that the evidence shows that plaintiff's injuries were caused by prior happenings. Here, it is not known what issue, liability or damages, the jury considered decisive. Also, the instant case differs from the Jeffrey case in that the question is not whether plaintiff suffered any injuries, but whether plaintiff's in-

438

juries were caused by the instant occurrence or prior happenings—an issue for the jury. Therefore, we hold that the court should have allowed plaintiff's motion for a directed verdict on the issue of liability and submitted to the jury only the issue of damages.

The record indicates that the question of the cause of plaintiff's injuries is a very close question, which required a trial free from prejudicial trial errors. Collectively, the alleged trial errors might have been prejudicial to plaintiff. However, in view of our conclusion, no such determination is required in this appeal, because we believe that in a new trial these alleged trial errors should not recur.

On remandment, the only question which need be submitted to the jury is that of damages. There are no issues upon the elements of plaintiff's due care and defendant's negligence. The jury should be directed accordingly and instructed only as to damages.

Reversed and remanded.

ENGLISH, P. J. and BURMAN, J., concur.