**Robert Sughero, Plaintiff-Appellee, v. Jewel Tea Co., Inc., et al., Defendants-Appellants.**

**Gen. No. 50,104.**

First District, First Division.

January 7, 1966.

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellants.

Warren J. Hickey, of Chicago (Warren J. Hickey and William J. Harte, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action in which defendants appeal from a $60,000 judgment. The trial court directed a verdict on the issue of liability and submitted only the issue of damages to the jury.

Defendant Perrino, while driving a tractor unit of defendant Jewel Tea Company east on Belmont Avenue, Chicago, skidded on the wet asphalt pavement into the westbound lane and collided with plaintiff's westbound Ford station wagon.

Defendants' theory on appeal is: "1. There is no evidence of any negligence of defendants. The fact that the tractor skidded on the wet asphalt does not constitute negligence and is not evidence of negligence. 2. The court had no basis on which to find that defendants were guilty of negligence as a matter of law. 3. Plaintiff admitted on pretrial deposition he never saw the tractor before he collided with it. He also admitted that he did not see the cars ahead of the tractor. Had he kept a proper lookout he could have stopped or veered to the north so as to miss the tractor. The court erred in holding plaintiff had proved his own due care as a matter of law."

The collision occurred on the morning of July 26, 1960, between 9:30 and 10:00, about 125 feet west of the intersection of Belmont Avenue and Oleander Avenue, a north and south street. Five automobiles were moving east on the inside lane of Belmont toward the intersection, when the first car stopped suddenly. Defendants' tractor was the fourth car in line. Perrino applied the brakes

and the tractor "spun" and went into the westbound lane and stopped. Plaintiff's car, traveling west, collided with the tractor at its right front and mid-section. The fifth eastbound car, a truck which was following defendants' tractor, stopped without incident.

The occurrence evidence of plaintiff consisted of the testimony of (1) the plaintiff; (2) the driver of the fifth car; and (3) an investigating police officer, who related a post-occurrence conversation with defendant Perrino.

Plaintiff testified he was familiar with Belmont and Oleander and was traveling west on Belmont at 20 to 25 miles per hour. "As I approached Oleander I wasn't following any cars. . . . I could see clearly. It had rained earlier that morning, but the streets were dried up. At the time of the accident it wasn't raining. As I crossed Oleander looking straight ahead, I did not see any cars ahead of me. I was traveling on my side of the street. I did not cross the center line. I saw another vehicle cross the center line before the accident. It was a truck, a Jewel truck. The truck was 10 to 15 feet away when I first saw it. At that time the truck was swerving and skidding. . . . It was coming into my lane across the line. There were other vehicles on the other side of the street that were eastbound. I saw one . . . about halfway past the car that was stopped. I was approximately two feet from the center line of the street. When I saw the truck come into my lane, about 10 or 15 feet away, I applied my brakes. He came into my lane and hit me. I don't know what part of the truck hit me. From the time it came into my lane and hit me was a fraction of a second. . . . [The other vehicle] was skidding out of control. At the time of the impact, my vehicle was moving. . . . I applied my brakes as soon as I saw the truck. There was nothing in my lane before the truck came into it. The position of my vehicle after the accident was westbound. It was still on my side of the street."

On cross-examination, plaintiff testified, "The accident itself occurred west of Oleander. It was opposite the gas station, on the west lane, north side of Belmont and west of Oleander. . . . It was between the two entrances of the gas station when I saw the tractor. When I crossed Oleander I was going 25 miles per hour. When I saw the tractor it was coming right at me. It was facing east. He was opposite the pole between the two entrances to the gas station. I was going 25 miles an hour. I don't know how far I went after I saw the tractor. I applied my brakes. My brakes operated. The speed of my car diminished. I don't know how much. . . . I did not swerve when I saw the tractor. When I saw the tractor, it was in the inner westbound lane. The impact was between my car and the tractor in the inner westbound lane."

The fifth car driver, Carmen Trimarco, testified that he was driving a truck east on Belmont. "On Belmont there is one open lane and one on the side for parking. There is a line in the center dividing eastbound from westbound traffic. . . . It had rained earlier that morning. . . . With relation to the center line I was driving about a foot or a foot and one-half and I would say at least two feet from the center. . . . During my going east there were cars ahead of me. The vehicle ahead of me the closest during the accident was a truck. It was a Jewel truck." Trimarco was traveling 15 or 20 feet behind the truck. As they came closer to Oleander, "I seen he was going into a skid so I applied my brake. . . . He went in the other lane, facing north as he was skidding . . . across the street. . . . I heard a crash." Trimarco did not skid—"No, I pulled on the side."

On cross-examination, Trimarco testified that, "As I approached Oleander Street, I was going between 20 and 25 miles per hour. I would say the truck ahead of me was going about the same speed." He saw "an indication of the tractor that the brakes were being applied," and

357

that "he skidded to the north, north lane. . . . He was going into a skid when I seen him." Trimarco turned to the right to avoid hitting the truck. He said, "It was wet, very bad. He [Perrino] must have hit an awful oil spot or grease spot. . . . I don't know whether there was a grease spot or oil spot there where the tractor skidded." The other lane going west was dry, "but the lane he was in was wet."

Defendant Perrino, the tractor driver, testified, "The brakes were in good condition. I was going east on Belmont and approaching Oleander. There were other vehicles eastbound. Those vehicles were right on Belmont. They were ahead of me. There were three vehicles ahead of me as I was in the vicinity of Oleander Avenue. I had been following them for some distance. At Oleander Avenue the first car in front of me, the one furtherest away from me made a sudden stop. The vehicles ahead of me also made a sudden stop. I applied my brakes. The tractor spun. It spinned. The tractor went over the westbound lane. The surface of the street was wet. After the tractor went over into the westbound lane, I stopped. Then I was hit. I was hit in the right side of the tractor. . . . At the time my tractor came into the westbound lane, there wasn't any westbound traffic. There were no automobiles parked on the north side of Belmont. . . . After I skidded, the front of my tractor was in the westbound lane. The rear was in the eastbound lane."

On cross-examination, Perrino testified that he was between 45 to 50 feet from the first car when he saw it come to a stop; that he was about 40 feet from the second car when it came to a stop, and about 20 feet from the third car when it came to a stop. "I didn't see the other car at all. I don't know where it came from. It happened about 2 seconds after I went across the center line. I was stopped for about two full seconds. My tractor was in the north lane and the south lane. Belmont

runs east and west. . . . At the time the impact happened, part of my tractor was in the west lane. The front of my tractor was about 20 feet from the north curb. No I'm sorry, about 12 feet. . . . I would say the accident happened about two to five seconds just after I went over the center line. I was standing still all the time. My vehicle was against the curb when I got out of it. I was forced into the curb."

A witness for defendants, Richard Tolf, testified he saw the occurrence as he was coming from his office in a building directly across from the scene and approximately 125 feet west of Oleander Avenue. "To start out with, there was a car which was about to make a left turn which stopped rather suddenly. This was followed by two other cars, followed by the Jewel Tea tractor. The two cars stopped. The tractor of the Jewel Tea Company swerved to the left; his brakes were applied because the wheels were stopped; they were not rolling. By this time the car coming west was approximately at the intersection of Oleander. It continued to go forward and struck the Jewel Tea tractor. The vehicle stopped dead. The tractor did go forward across the other lane at that time."

On cross-examination, Tolf testified, "The first car stopped at Oleander. It was going to make a left turn. When that car stopped at Oleander I would say the Jewel truck was 200 to 250 feet from the first car. . . . The car at Oleander stopped abruptly. The second car came to a stop maybe a foot or two behind the first car. When the second car came to a stop, the Jewel truck was away from the second car 30 to—about 50 feet. The car that had come up and stopped a foot behind the traffic, it slid. It didn't slide across the center line. The third car came to a complete stop, roughly about one or two feet behind the car ahead of it. And when the third car came to a stop, the Jewel truck was roughly 50 feet from the third car. . . . I would say that he applied his brakes.

359

When I saw the Jewel truck moving in that lane, there was a time when the Jewel truck started to go across the center line of the street. . . . I would say that he was across the center line and actually stopped for maybe one, two, three, four, five seconds. . . . When the collision occurred, the Jewel truck was facing northeast."

As no issue is presented on appeal as to the amount of the damages, the decisive question is whether the trial court erred in directing a verdict for the plaintiff on the issue of liability.

■■ On a motion by plaintiff to direct a verdict against defendants at the close of all the evidence, the trial court must view all of the evidence in its aspects most favorable to defendants, together with all reasonable inferences to be drawn therefrom. (34 ILP, Trial, § 132.) The court may not consider any conflicts in the evidence, or its weight or preponderances, or the credibility of witnesses. "It is proper for a court to direct a verdict for a plaintiff on the issue of liability at the close of all the evidence when the plaintiff has made out a case and there is no evidence contradicting or tending to contradict the plaintiff's evidence on that issue." Ryan v. Goldblatt Bros., Inc., 24 Ill App2d 239, 242, 164 NE2d 280 (1960); Houchins v. Cocci, 43 Ill App2d 433, 434, 193 NE2d 597 (1963).

Initially, we consider defendants' contention that "the court erred in holding plaintiff had proved his own due care as a matter of law." Defendants argue, "There were no cars parked on the north side of Belmont. There would have been ample room for plaintiff to have driven by the tractor had he kept a lookout. Plaintiff had ample time in which to stop. He had to pass three cars. Going 20 miles an hour as he testified, he would have had time to stop had he kept a proper lookout."

■■ In our opinion, all reasonable minds, in the exercise of a fair and honest judgment, would be compelled to reach the conclusion that plaintiff was in the

exercise of due care at the time of the occurrence. He was in his proper lane, moving west at 20 to 25 miles an hour, when an eastbound truck, 10 to 15 feet away, crossed the center line into his lane and stopped. He applied his brakes as soon as he saw the truck and did not swerve. This evidence stands uncontradicted. The testimony on behalf of defendants that the truck was stopped for a period of one to five seconds does not show that "plaintiff had ample time in which to stop" or to change lanes in order to avoid the collision. Split-second changing of lanes in moving traffic under the conditions portrayed by the evidence is not proper. (Ill Rev Stats 1963, c 95½, § 162.)

 Defendants further argue that plaintiff's pretrial deposition answers demonstrate that he was not keeping a proper lookout, and that "he could have avoided the collision." On cross-examination, plaintiff recalled the following questions and answers given by him in a pretrial deposition:

> "Q. Now, as you were proceeding westbound on Belmont, where were you when you first noticed this tractor that you had the collision with?
>
> "A. Well, it all happened so fast that I knew I was by the Gulf station over there. That is all I remember, and that he just came right out.
>
> " . . .
>
> "Q. Did you ever see this tractor before the two of you collided?
>
> "A. No.
>
> " . . .
>
> "Q. Did you see any eastbound vehicles at all before the collision?
>
> "A. I was looking straight ahead. I didn't—I may have seen it but I didn't notice."

As asserted by plaintiff, "In the very same deposition immediately thereafter and in response to other questions by the same defense counsel, plaintiff described the action of the tractor as it came across the center line in front of his car prior to impact. His testimony on pretrial deposition was identical to his testimony at trial, namely, that his car was 10 to 15 feet from the truck when he saw it swerving and skidding into his lane. He applied his brakes but couldn't stop in time." There is no merit in this contention.

We consider next the issue of defendants' negligence as a matter of law. Defendants argue, "Defendants' truck was in good condition. Defendant Perrino was driving carefully at a moderate speed. He was not following too closely. Defendant Perrino applied his brakes because the cars in front of him stopped abruptly. The fact that the truck skidded on the wet asphalt was not negligence nor did it prove negligence." Defendants cite a number of authorities to show that "skidding is not evidence of negligence" (Bradley v. Madden Co., 333 Ill App 153, 76 NE2d 797 (1948)), and that "the burden was on the plaintiffs to produce evidence of negligence; it could not be inferred from the fact that the car skidded or that the accident happened, nor could it be left to guess, speculation or surmise." (Gooch v. Shapiro, 8 NY2d 1088, 170 NE2d 830 (1960); Kauffman v. Bieker, 110 Ohio App 496, 165 NE2d 453 (1959).) Defendants also cite Ferdinand v. Lindgren, 32 Ill App2d 133, 177 NE2d 10 (1961); Piggott v. Newman, 334 Ill 75, 78 NE2d 328 (1948), and others to show defendants' negligence was a jury question on the theory of "unavoidable accident," and that the collision occurred without fault on the part of the defendants.

On this issue, the language in Murphy v. Kumler, 344 Ill App 287, 100 NE2d 660 (1951), is in point. "Certainly it is not incumbent upon the plaintiff to show conclusively why the defendant was on the wrong side

of the road or the exact cause of the skid. Only on rare instances would that knowledge be possessed by the plaintiff. . . . In a collision such as this, where one of the cars is on the wrong side of the highway and out of control, certainly it is the duty of the defendant to show that he was in that situation because of some particular reason other than his own negligence."

Defendant Perrino's testimony shows that he had been following three vehicles for some distance, when the vehicles ahead of him made sudden stops. He applied his brakes and the tractor "spun" into the westbound lane. Tolf testified that the second car came to a stop within a foot of the first car, and "it slid. It didn't slide across the center line. The third car came to a complete stop, roughly about one or two feet behind the car ahead of it. And when the third car came to a stop, the Jewel truck was roughly 50 feet from the third car. . . . I would say that he applied his brakes."

■ ■ Defendant Perrino was an experienced truck driver. He knew the street was wet when he applied his brakes, and when his tractor stopped, he was across the center line and in a westbound lane. The drivers of the two cars ahead of Perrino and the truck behind him had their vehicles under sufficient control so as to stop safely. Defendant Perrino had a duty to do likewise and to be sufficiently alert to have had his tractor under proper control so that he could have stopped it without "spinning" into the westbound lane. There is no evidence in the record which shows or indicates that the occurrence came about "because of some particular reason other than his own negligence." If defendants' tractor was 200 feet behind when the first car stopped abruptly, as stated by Tolf, it demonstrates that "The fact that his car skidded into plaintiff's car, even though the pavement was wet, leaves room for no other inference, . . . except that under the circumstances defendant 'was driving too fast or following . . . too closely.' " (Ceeder v. Kowach,

17 Ill App2d 202, 204, 149 NE2d 766 (1958).) The directed verdict for plaintiff on the issue of defendants' liability was proper.

For the reasons given, the judgment is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.