**Roy Tatum et al., Plaintiffs-Appellants, v. Alfred Rooker and Leyden Motor Coach Co., Defendants-Appellees.**

## Gen. No. 49,868.

First District, Third Division.

February 17, 1966.

Sherman Dickholtz, of Chicago, for appellants.

Howard C. Sorensen and Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment rendered on a verdict in favor of defendants in a personal injury case. Plaintiffs contend that the court erred in failing to direct a verdict for the plaintiffs on the issue of liability, and that the court also erred in failing to grant a new trial because the verdict was contrary to the manifest weight of the evidence.

Plaintiff Pearl Tatum was riding as a passenger in her husband's car on January 25, 1958. Her husband, Roy Tatum, was driving the car. The car was proceeding in a westerly direction on Franklin Street from the intersection with Rose Street in the Village of Franklin Park, Illinois. The Tatums were going shopping at about 2:00 o'clock on a Saturday afternoon. Their car had stopped for a car pulling out of a parking space at the curb. Cars were parked diagonally to the curb. The pavement was dry.

The testimony of Roy Tatum and of the defendant, Alfred Rooker, is contradictory as to location of the Tatum car and the bus immediately preceding the accident. The plaintiffs testified that they had stopped thirty seconds to a minute before the bus of the defendant struck

7

their car from behind. Alfred Rooker, the defendant bus company's driver, testified that the accident occurred about 200 or 230 feet west of the intersection of Rose, that he had made a left turn behind the Tatum's car and followed it as it proceeded west on Franklin. The traffic was heavy and he followed plaintiffs' car at a distance of 2 or 3 feet. He saw a number of cars parked diagonally on Franklin and also the auto that started backing out toward the Tatum's car. The highest speed he attained from the time he turned onto Franklin to the time of the impact was 2 or 3 miles per hour. The auto that was moving out of the parking stall was moving very slowly, less than a mile an hour. There had been two or three cars in front of the Tatum car but they cleared out after four or five stops from Rose and Franklin. There had been, according to Rooker, four or five stops on Franklin Street after the turn and the cars were moving two or three feet at a time. Rooker watched the car that was backing out of the parking area and it stopped. The car in front of him (Tatum car), without giving him any signal as to what it intended to do, came to a stop. There were no stop lights on the rear of the car in front of him. As a result of the impact the Tatum car was pushed forward one foot, according to Rooker, and three feet according to the plaintiffs. The bus at the time the driver applied the brakes was moving about 2 miles an hour. The bus did not move after the impact. At the time Rooker made his left turn onto Franklin Street there was about a 40-foot gap between the bus and Tatum's car. He pulled up to within three feet of Tatum's car and stopped. He then proceeded moving as the cars ahead moved and made several stops before the collision.

Plaintiff Roy Tatum testified that he stopped to let the other car, which was backing out of the parking space, get all the way out. Roy Tatum also testified that he was about one-third of a block from Rose Street when

8

he first observed the bus and at that time he was stopped to let the other driver out of the parking space, and that about thirty seconds to a minute after he stopped the bus struck the rear end of his car. The rear end of the parked car had not quite gotten out of the parking space.

Alfred Rooker, the driver of the bus, testified that the backing vehicle was moving at the time of contact, and stopped with its left rear about two feet from the center of the right side of the Tatum car.

█ While it is true, as contended by plaintiffs, that a verdict may be directed for a plaintiff in a proper case, it is, likewise, true that a verdict will not be directed for the plaintiff in all cases.

Plaintiffs, in support of their argument, cite Houchins v. Cocci, 43 Ill App2d 433, 193 NE2d 597. In that case the court found on the issue of liability that in considering all of the evidence in its aspect most favorable to the defendant, it failed to find any evidence standing alone and considered to be true, together with the inferences that may legitimately be drawn therefrom which fairly tended to support the defendant's defense that plaintiff stopped suddenly in the middle of the road without warning and without reason. The plaintiff in that case was seated in a standing automobile and was struck in the rear by defendant's automobile. The plaintiff in that case had put on his left directional light and slowed down as he approached the intersection. He remained at a standstill for approximately 25 or 30 seconds during which his directional signal was on. He looked into the rearview mirror immediately before the impact and saw a car about one foot away and then felt the impact. The defendant in that case testified that she was traveling with her four and one-half-month-old daughter in a bassinet on the seat beside her; that she hit the rear end of an automobile operated by the plaintiff; that she had been driving approximately 25 miles an hour and slowed down

9

a bit at the intersection; that when she first saw the plaintiff's car it was stopped and that plaintiff's car was about 20 feet in front of her when she first saw it. The court there held that the defendant had a duty to see other cars traveling ahead of her in her traffic lane and to be sufficiently alert to have had her car under proper control so that she could have stopped it without running into other traffic lawfully on the highway and lawfully stopped waiting to make a left turn. In that case the uncontradicted evidence of the plaintiff was that he was stopped for a period of time in his proper lane waiting to make a left turn with nothing to obstruct the view of any car coming from plaintiff's rear in the same lane. It is significant that the court found that there was nothing in the evidence from which it could be inferred that the plaintiff was negligent or stopped abruptly. In the instant case there is no question but that the plaintiffs' car stopped abruptly. According to plaintiffs' testimony, Roy Tatum stopped to permit the parked car to back out so that he might take the parking space which would be left unoccupied. The evidence of defendants definitely showed that plaintiffs' car came to a sudden stop without any previous warning.

In Ferdinand v. Lindgren, 32 Ill App2d 133, 177 NE2d 10, a rear end collision case, the defendant knew the condition of the highway and had had no trouble in bringing his car to a stop on the icy pavement just a block from the scene of the collision in question. In that case the jury found under all of the evidence that defendant was not guilty and the court said that whether the defendant was or was not guilty was a question of fact to be determined by the jury and that this court cannot say, as a matter of law, that the jury was not warranted in so finding. That case also referred to the case of Palmer v. Poynter, 24 Ill App2d 68, 163 NE2d 851, wherein the court stated on page 71:

"Upon a motion made by a plaintiff for a directed verdict, the court must consider all of the evidence and if there is any evidence, standing alone, together with every reasonable inference therefrom, which tends to prove the defendant's position in the case, then the motion should be denied. If there is a conflict in the evidence on any material matter that necessitates weighing of the evidence or judging of the credibility of witnesses, and if it appears that reasonable minds might come to different conclusions, a verdict should never be directed." (Cases cited.) "With regard to the granting of a new trial because the verdict is against the manifest weight of the evidence, it is the rule that this court cannot substitute its judgment for the judgment of the jury unless an opposite conclusion is clearly evident."

█ From the facts in this case it might well have been that the defendants found themselves in a helpless condition as was pointed out in the Ferdinand case, supra. In the instant case it could be said that the plaintiffs were negligent in coming to a sudden stop without warning, or that the accident was unavoidable. If there is a conflict in the evidence on any material matter that necessitates weighing of the evidence or judging of the credibility of witnesses, and reasonable minds might come to different conclusions, a verdict cannot be directed.

The court in Weiner v. Battista, 10 Ill App2d 490, 135 NE2d 113, held that an instruction to the effect that if neither the plaintiff nor the defendant was negligent the jury should find for the defendant was held to be proper.

█ It cannot, therefore, be said in this case that the defendants were proven to be negligent as a matter of law.

█ As to the point that the verdict is contrary to the manifest weight of the evidence, we do not believe

11

from an examination of the evidence that it can be said that the manifest weight favored either the plaintiffs or the defendants. Reasonable inferences may be drawn by a jury and an appellate court cannot set aside a verdict merely because a jury could have drawn different inferences or because we might have reached a different conclusion. Palmer v. Poynter, 24 Ill App2d 68, 163 NE2d 851; Niman v. Pecatonica Livestock Exchange, Inc., 13 Ill App2d 144, 141 NE2d 327.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.