Walter Glaze, Plaintiff-Appellant, v. James Owens and Kerber Packing Co., an Illinois Corporation, Defendants-Appellees.

Gen. No. 68–61.

Second Judicial District.

December 30, 1968.

Jordan, Akemann and Miles, of Elgin, for appellant.

Gates W. Clancy, of Geneva, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is a personal injury action brought by the plaintiff, Walter Glaze, to recover damages for injuries which he sustained in a rear-end collision, wherein the defendant, James Owens, was the driver of a truck owned by the defendant, Kerber Packing Co., which struck the plaintiff's station wagon. The jury returned a verdict for the defendants and judgment was entered thereon. The plaintiff filed a post-trial motion which was denied, and the plaintiff appealed.

The plaintiff contends that the trial court erred in withdrawing the question of wilful and wanton conduct from the jury; in giving an instruction relating to contributory negligence; and in admitting certain medical testimony. He also argues that the verdict was contrary to the manifest weight of the evidence.

The only occurrence witnesses were the plaintiff, the defendant Owens, and George Lunacek, who was driving another car in the area of the accident. There was little, if any, factual dispute. The testimony, however, was inconclusive as to some of the relevant issues. The accident occurred on a four-lane blacktop highway at approximately 3:30 p. m. on May 5, 1964. The weather was clear and the pavement was dry. A school bus, which had stopped to discharge some children, had been traveling in an easterly direction in the outside easterly lane of the highway. The car of the independent witness, Lunacek, was following the bus and stopped behind it, but in the inner of the two eastbound traffic lanes. The plaintiff's car was approaching from the east and was traveling in a westerly direction. The defendant's truck was following the plaintiff's car.

The witness, Lunacek, testified that the school bus was stopped as the other cars were approaching; that its flasher warning lights were on and its warning arm, which indicated that approaching vehicles should stop,

174

was extended; that both the plaintiff's car and the defendant's truck were approaching at approximately the speed limit of 45 m. p. h.; that the defendant's truck was approximately four to five-car lengths behind the plaintiff's car; and that both of these vehicles were in the outer lane of the two westbound traffic lanes. He further testified that the plaintiff's car stopped for the school bus; that the defendant's truck was unable to do so; and that the truck driver made an attempt to stop and to avoid the car, but was unable to do so and ran into the rear of the plaintiff's car.

The evidence disclosed that there was a slight curve and ascending grade in the road at approximately the point of impact of the car and the truck; that there were three road signs at nearby locations to the east of the point of the accident, which were designed for vehicles traveling in a westerly direction—that in which the plaintiff's and the defendant's vehicles were traveling; and that one sign indicated the speed limit; another, a curve; and a third, a school crossing.

The plaintiff testified that when he first saw the school bus, the warning lights were on and the "stop" arm was extended; that at this time, his car was approximately 500 to 600 feet away from the bus; and that he was traveling from 35 to 50 m. p. h. He was asked whether he continued this speed when he saw the lights at 500 to 600 feet away, and he answered, "No." He stated that he slowed up and stopped, and that in relation to the school bus, he did not know where he first applied his brakes. On cross-examination, counsel for the defendants asked the plaintiff, "Would you say you stopped within maybe 50 feet after you slowed up?" and he answered, "I would guess I stopped when I was 50 feet, completely."

The plaintiff had lost the sight of his left eye prior to the accident, but his vision in the other eye was satisfactory and he had a valid driver's permit. He further

175

testified that he did not look in his rearview mirror prior to stopping; that he did not see the defendant's truck at any time until after the impact; and that there was nothing to obstruct his view as he looked in a westerly direction just prior to the accident.

The defendant, Owens, did not testify extensively regarding the occurrence. He was given a citation for careless driving under an ordinance which provided:

> "It shall be unlawful to operate any vehicle in the Village in a careless, reckless or wanton manner, or carelessly so as to endanger life or property."

He testified that he had pled guilty to this citation, but that he did so because it was a "shorter way out."

■■ We believe that the trial court was correct in withdrawing the question of wilful or wantonness under these facts, from the jury's consideration. Wilful or wanton conduct has been described: as a course of action which shows an actual or deliberate intention to harm or injure another; as an intentional disregard of a known duty which is necessary to the safety of others or to their property; and as an act committed under circumstances exhibiting a reckless disregard for the safety of others. In order for a person to be guilty of wilful or wanton conduct, he must be conscious of his conduct and conscious, from the surrounding circumstances, that such conduct would naturally and probably result in injury to another. Scarlette v. Hummer, 41 Ill App2d 138, 143, 144, 190 NE2d 370 (1963). The defendant's conduct, as appears from the record, was not such that it would permit either the trial court or this court to approve a verdict finding the defendants guilty of wilful and wanton conduct, had the jury done so.

■ The plea by the defendant, Owens, to the traffic citation charging a violation of an ordinance prohibiting "careless, reckless, or wanton" driving, was not sufficiently specific to justify concluding that he was pleading

guilty to wilful or wanton conduct. The plea was an admission against interest, which may be explained, as was done by Owens when he stated that in pleading guilty to the charge, he merely was looking for the shorter way out. Galvan v. Torres, 8 Ill App2d 227, 233, 131 NE2d 367 (1956); Cleary, Handbook of Illinois Evidence, 2nd Ed, § 17.12. The trial court acted properly in taking the question of wilful and wanton misconduct from the consideration of the jury.

We are compelled to agree with the plaintiff, however, that the verdict of the jury was contrary to the manifest weight of the evidence. We do not comprehend how the jury, under any interpretation of the evidence, could have failed to find that the conduct of the defendant, Owens, was negligent. The defendants suggest that they were thrown into a perilous situation, in part, because of the condition of the road; and that the curve in the road and the grade were factors which contributed to thrusting them into such situation. However, it is certain that the defendant, Owens, should have seen the school bus in ample time to have his truck under sufficient control to enable him to stop prior to reaching the school bus, as did the plaintiff.

The plaintiff testified that he saw the school bus from 500 to 600 feet away. The independent witness, Lunacek, who had stopped his car in the rear of the school bus, testified that he saw both the plaintiff's and the defendant's vehicles approaching from a sufficient distance to enable him to estimate their speed. His estimate appears accurate from the plaintiff's testimony as to the speed he was traveling. The cab of the truck driven by Owens was higher than the driver's seat of either the plaintiff's or the witness's car, and he should have been in a better position to see the bus than either the plaintiff or Lunacek.

There was nothing to block the vision of either the plaintiff, the defendant Owens, or Lunacek. Neither the

177

grade nor the curve was extreme. The plaintiff and Lunacek both testified that the curve and grade were slight. These conditions could afford no justification for the defendant's failure to be aware of all existing circumstances as he approached the point of the impact of the truck and the car.

The evidence in its entirety, when viewed in the light of common experience, knowledge and observation in the ordinary affairs of life, supports the conclusion that the defendant was "looking but not seeing." Had he maintained a proper lookout and been alert to, or aware of the circumstances with reference to the highway ahead, he would have known that he would be called upon to stop his vehicle regardless of what the plaintiff did, because of the stopped school bus. Had he looked and seen, he also should have expected that the plaintiff would stop his car as he was required by law to do.

The jury verdict for the defendants, under these circumstances, constituted a finding that either the defendant Owen's failure in this respect did not constitute negligence or that the plaintiff was guilty of contributory negligence, or a finding both that the plaintiff was guilty of contributory negligence and that the defendants were not guilty of negligence. Pantlen v. Gottschalk, 21 Ill App2d 163, 170, 157 NE2d 548 (1959). We conclude that a finding that the defendants were not guilty of negligence was against the manifest weight of the evidence. We will next consider whether under the evidence, the plaintiff was guilty of contributory negligence.

The defendants also stress that the plaintiff applied his brakes suddenly and thereby placed the defendant, Owens, in a perilous situation from which he was unable to extricate himself and to avoid the accident. They contend that the sudden application of brakes by the plaintiff was evidence that the plaintiff was guilty of contributory negligence and that the defendant, Owens,

178

was not negligent in his failure to avoid the accident. This contention presents a closer question.

However, the defendant, Owens, did not testify that the plaintiff stopped his car suddenly. In order to support this contention, the defendants rely upon the testimony of the plaintiff wherein he stated that after seeing the school bus some 500 to 600 feet away, he did not continue at the same speed, but rather, slowed up and stopped. Defense counsel then asked: "Would you say you stopped within maybe 50 feet after you slowed up?" The plaintiff answered, "I would guess I stopped when I was 50 feet, completely." From this testimony, it is not reasonable to infer that the plaintiff stopped suddenly, thereby placing the defendant in an unavoidable perilous situation. Fairly read, the testimony of the plaintiff indicates that he slowed up after seeing the school bus some 500 to 600 feet away, and then stopped. After he slowed up, he "guessed" he stopped within the distance of 50 feet suggested by the defense counsel.

The plaintiff admitted that he had not looked in his rearview mirror prior to stopping. However, we do not believe that this admission alone would permit the jury to properly find that the plaintiff was guilty of negligence proximately contributing to the cause of his injury. The defendants suggest that had the plaintiff looked in his rearview mirror, he might have pulled onto the shoulder and avoided the accident. The fact that he might have thus avoided the accident, does not, per se, render him guilty of contributory negligence.

Under proper circumstances, the combination of factors, such as the failure of a driver to look into his rearview mirror and at the same time apply his brakes, might render him guilty of contributory negligence. However, such circumstances were not presented in the case at bar. Consequently, we do not believe that the record before the jury warranted a finding that the plaintiff

applied his brakes suddenly, or that he was otherwise guilty of contributory negligence; and we believe that such finding, if made, was against the manifest weight of the evidence.

Both parties have cited a number of cases involving rear-end collisions. While these cases are helpful, each contains distinguishing factors and cannot be said to be controlling.

Counsel for plaintiff cited Kocour v. Mills, 23 Ill App 2d 305, 162 NE2d 497 (1959) as a case having a factual situation similar to the case at bar. Therein, it was undisputed that the plaintiff had been stopped at an intersection for approximately ten seconds before his car was struck in the rear by the defendant's car. The defendant testified that he had been following another car in the passing lane as he approached the intersection; that the light turned to red, and the car in front of him stopped; that he did not have time to stop without hitting the car in front of him; and that he attempted to go between that car and the plaintiff's car.

In Kocour, no question of contributory negligence was involved. The court held that it was proper to hold the defendant guilty of negligence as a matter of law in that he was familiar with the area and knew of the traffic signal; that just prior to the collision, he was either driving his car too fast or was following too closely behind the preceding car when it stopped in obedience to a traffic signal; and that the defendant knew, or should have known, that the traffic signal could change at any moment and that he should have had his car under sufficient control to have been able to stop if this had happened.

In Ceeder v. Kowach, 17 Ill App2d 202, 149 NE2d 766 (1958), also cited by the plaintiff, the jury returned a verdict for the defendant. The question of contributory negligence was not involved in the case. The defendant had been following the plaintiff in a lane of traffic and

180

struck the plaintiff's car in the rear when the plaintiff stopped for a red light. The defendant's car had skidded on wet pavement. The Appellate Court stated that the defendant was guilty of negligence as a matter of law since he should have foreseen that the plaintiff would probably have to stop for a red light; that the traffic in adjoining lanes would prevent him from turning out of his lane; that he would have to apply his brakes and would probably skid on the wet pavement; and that if he were traveling too fast or too close, he would then strike the plaintiff's car. The Appellate Court reversed and remanded on the issue of damages only.

In Houchins v. Cocci, 43 Ill App2d 433, 193 NE2d 597 (1963), also relied upon by the plaintiff, the jury returned a verdict in favor of the defendant in a case involving a rear-end collision. The Appellate Court reversed and remanded on the damage issue only. Again, there was no real issue as to contributory negligence even though the defendant contended that the plaintiff was negligent in stopping in the middle of the road without warning and reason. The plaintiff, however, had stopped in the left hand lane of two northbound lanes of traffic, and was waiting to make a left hand turn into a Christmas tree lot. It was undisputed that he had been stopped at this point for a period of time before his car was struck by the defendant's car.

The defendant stated that she momentarily took her eyes off the road to look at her baby, but that she was not negligent since she did not expect someone to be stopped in the middle of the road where there was no reason to stop. The Appellate Court held that under these facts the trial court should have directed a verdict for the plaintiff on the issue of liability.

The defendant also has cited certain rear-end collision cases which are helpful, but not controlling. In Tatum v. Rooker, 69 Ill App2d 6, 216 NE2d 165 (1966), the Appellate Court affirmed a judgment in favor of the defendants

in a case involving a rear-end collision. The testimony in the case was conflicting. The plaintiffs testified that their car had been stopped over 30 seconds prior to the time they were struck. The defendant testified that the cars were traveling in a lane of traffic, approximately two or three feet apart, at a speed of about two to three miles per hour; that a car was backing out of an angle parking stall in front of the plaintiff's car; that the car that was backing out stopped, and the plaintiff's car stopped without warning or signal; and that there were no stop lights on the rear of the plaintiff's car.

The Appellate Court stated that under the contradictory versions of what had happened, the jury could have found that the plaintiff was negligent in coming to a stop without a warning, or that the accident was unavoidable; that under such circumstances a verdict should not have been directed; and that in view of the conflicting evidence, the verdict was not contrary to the manifest weight thereof.

In Cook v. Boothman, 24 Ill App2d 552, 165 NE2d 544 (1960), the evidence was again conflicting with reference to what had happened in a rear-end collision. The plaintiff testified that she stopped her car at a stop sign, and while waiting there, was struck from the rear by the defendant's car. The defendant testified that the plaintiff had stopped her car at the stop sign and that she then moved ahead; that he brought his car to a stop at the sign, and while stopped, he was looking for vehicles approaching on the adjoining street and not for the plaintiff's car, which he thought had gone on; and that as he pulled out he struck the plaintiff's car in the rear. The Court, at page 558—after referring to a number of cases which it acknowledged to collectively hold that a driver of an automobile, who does not maintain a proper lookout ahead for traffic, is negligent—stated that the driver of the vehicle which is struck is not nec-

essarily entitled to recover as a matter of law. Such driver must also be free of contributory negligence. The court said that the conflicting testimony before it did not clearly show that the plaintiff was free from contributory negligence, and it thus, affirmed the verdict of the jury in favor of the defendant.

In Ferdinand v. Lindgren, 32 Ill App2d 133, 177 NE2d 10 (1961), the Appellate Court affirmed a judgment for the defendant in an accident involving a rear-end collision. The defendant's car, prior to the collision, was in good condition and he had experienced no difficulty in stopping his car when required to do so. The defendant was aware that the streets were icy, and when the plaintiff's car stopped, he was approximately four-car lengths behind him and was traveling between five and ten miles an hour. The defendant applied his brakes but the car was on ice and simply would not stop. The Appellate Court held that under these circumstances the jury might well have found the defendant to have been in a helpless condition when he found his car was on ice and he was unable to stop it.

In most of the cases cited by the plaintiff, there was no issue as to contributory negligence. In most of the cases cited by the defendants, there was conflicting testimony as to the nature of the occurrence, leaving the jury free to decide which of the factual versions it would accept, or, as in the last cited case: whether the defendant was in a helpless condition, not of his own making.

In the case at bar there was no conflicting testimony with reference to what happened. The defendant testified that he had been over this road on prior occasions and was familiar with it. There were warning signs just prior to the place of the collision, including a sign indicating a school crossing ahead. The plaintiff, whose car was immediately in front of the defendant's truck, was able to see the flashing warning signals of the school

bus at least 500 to 600 feet away. The driver coming from the other direction was able to see the vehicles of both the plaintiff and the defendant Owens, as they were approaching the school bus. The highway had four lanes at this point, and the defendant had not only the alternative of stopping prior to hitting the plaintiff's car at the point where the school bus was stopped, but also, of turning into the inside lane of traffic, or onto the shoulder to avoid the plaintiff's car, if he could not stop in time. The defendant did not complain in his testimony of any sudden stop by the plaintiff, and the plaintiff's testimony does not justify a conclusion that he came to a sudden stop.

■■ While we are aware that the verdict of the jury may not lightly be set aside by this court (Tihay v. Aurora City Lines, 79 Ill App2d 107, 113, 223 NE2d 171 (1967)), a review of the entire record convinces us that the verdict of the jury was palpably erroneous and wholly unwarranted from the manifest weight of the evidence, and that it is, therefore, our duty to reverse and remand.

As heretofore stated in the opinion, any finding by the jury that the plaintiff was guilty of contributory negligence was against the manifest weight of the evidence. And, while we do not believe that, under the evidence, the defendants were guilty of negligence as a matter of law, we do believe that the record established sufficient negligence on the part of the defendant, Owens, to render the verdict in favor of the defendants, contrary to the manifest weight of the evidence.

Since the foregoing conclusion is determinative of the case, we believe that no purpose would be served in an extended discussion of the issues raised by the plaintiff as to the jury instruction and the medical testimony. We note in passing that we conclude that the trial court did not err in either respect.

For the reasons stated herein, the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.

MORAN and SEIDENFELD, JJ., concur.