JUDITH M. GAINES, Plaintiff-Appellant, v. FAYE J. TOWNSEND, Defendant-Appellee.

Fourth District   No. 4—92—0872

Argued March 17, 1993.—Opinion filed May 13, 1993.

Robert L. Silberstein (argued), of Peoria, for appellant.

Scott D. Drazewski (argued), of Luedtke, Hartweg & Turner, of Bloomington, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff Judith Gaines filed a complaint for injuries she allegedly received in an automobile accident. The jury returned a verdict in favor of defendant Faye Townsend and against plaintiff. On plaintiff's motion, the trial court originally found the jury verdict to be contrary to the manifest weight of the evidence, entered judgment in favor of plaintiff on the issue of liability, and ordered a new trial on damages. The trial court later vacated that order and reinstated the jury verdict. Plaintiff appeals, requesting this court to (1) reverse the trial court's decision to reinstate the jury verdict, (2) reinstate the trial court's judgment on liability in favor of plaintiff, and (3) remand for retrial on the issue of damages, or remand for retrial of both liability and damage issues. We affirm.

At the jury trial on May 8, 1992, plaintiff and defendant testified and the evidence depositions of Hongill Kim, M.D., and Richard Flores, M.D., were read to the jury. The testimony established that on September 7, 1989, defendant, after leaving her apartment, stepped in a large puddle of grease that surrounded her car. After stepping in the grease, defendant got into her car and tried to get the grease off of her shoe by wiping her shoe on the floor mat. She did not look at the floor mat or her shoe to determine whether she had wiped off all the grease. Defendant drove about 15 blocks to the intersection of Market Street and Lee Street, then started to apply her brakes when she was approximately two car lengths behind plaintiff's car. Defendant's car slowed about 50% before her foot slipped off of the brake pedal. Plaintiff testified she was properly stopped at the stop sign when she heard tires screeching; she looked in her rearview mirror

and saw defendant approaching. Defendant did not have time to reapply the brakes and her car collided with the rear of plaintiff's car. Defendant does not recall hearing any tires screeching before the collision. Plaintiff estimated that defendant's car was going about five to six miles per hour at impact. Plaintiff testified that the impact "wasn't bad," describing it as "moderate." When the cars collided, plaintiff's head "jerked back" into the seat. After the crash, both parties drove around the corner, inspected their cars, and exchanged information; plaintiff stated she did not notice any physical problems at the scene of the accident and indicated there was no noticeable damage to either car. After the accident defendant looked at her brake pedal and noticed that about one-half to one-third of it was covered with grease. Plaintiff noticed a burning sensation in her neck about an hour after getting home, and she developed a headache before going to bed. Plaintiff testified that prior to the accident she had not experienced any problems with neck or back pain.

The next day, September 8, plaintiff went to work although she had a headache and some neck pain. On September 9, plaintiff saw Dr. Kim about the pain in her neck. Dr. Kim took X rays, which "showed no obvious fracture and structure change related to the accident or injuries." Dr. Kim noted that plaintiff complained her neck was tender to the touch. Dr. Kim prescribed a muscle relaxant, and suggested that plaintiff wear a cervical collar and apply heat. Plaintiff went back to Dr. Kim on September 30 because her condition was no better, although the pills did give her some relief. Dr. Kim gave plaintiff a different muscle relaxant, and a painkiller, because she complained of headaches and that her neck pain was worse. Dr. Kim advised plaintiff to return for a follow-up appointment in one week. Plaintiff took the prescribed medication, but soon quit taking the painkiller because it made her sleepy at work. Plaintiff's condition was better when she went back to see Dr. Kim on October 10; that visit was mostly concerned with her sinus infection. Plaintiff again returned to Dr. Kim's office on January 24, 1990, because she felt her condition was not improving. On that date, Dr. Halasz, another doctor in the office, referred plaintiff to Dr. Flores, a physiotherapy specialist, for further evaluation and possible therapy for pain. Dr. Kim was questioned about the problem Dr. Halasz noticed on January 24:

"Q. [Attorney for plaintiff]: She still had the same problem on January 24 of '90 that she did on September 9 of '89?

A. [Dr. Kim]: Yes.

Q. Is that right?

A. Well, more likely related situation, yes.

Q. In other words, she had the same problem on January 24 of '90 she did on September 9 of '89?

A. You can say same, but it's not exactly the same but related. I say related."

When Dr. Flores first saw plaintiff on February 2, she complained of neck pain. He recommended outpatient physical therapy twice a week and a thermogram test. Dr. Flores stated that interpretations of the September 9 and September 30 X rays showed a small calcified area which represented a small degenerative spur in the "anterior longitudinal ligament." Dr. Flores felt the X rays showed a normal variation of osteoarthritis of the cervical spine, a condition not unusual for someone plaintiff's age. Regarding someone with such a variation of osteoarthritis, Dr. Flores stated: "[u]sually they don't have any type of symptoms from it until there has been an irritable flare that occurs from a traumatic incident, such as a motor vehicle accident." Dr. Flores' initial diagnosis on February 2 was "[c]ervical strain with possible left cervical radiculopathy secondary to 9/7/89 motor vehicle accident."

Plaintiff had the thermogram test on February 19 and met with Dr. Flores on March 8. Dr. Flores indicated there were two findings from the test: "One was cervical paraspinal and upper trapezius soft tissue irritability, and two was C6, C7, and C8 sensory nerve fiber irritation." He stated the nerve irritation would be due to trauma and was different from plaintiff's developmental osteoarthritis. Plaintiff's cervical pain was eliminated through therapy although her osteoarthritis which she developed prior to the auto accident still caused a grating sensation when she rotated her cervical column. Dr. Flores advised plaintiff that because of her osteoarthritis she could incur neck pain in the future. Plaintiff's attorney questioned Dr. Flores regarding the relationship between plaintiff's injury and the auto accident:

"Q. [Plaintiff's attorney:] Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether the condition of [plaintiff] as you observed it in your initial examination, as you saw it on the thermography, and as you treated and observed from time to time as you saw her was related to the incident of the automobile accident as she related to you?

A. Yes, sir, I felt it was."

However, Dr. Flores stated that he was not rendering an opinion whether the automobile accident caused or contributed to plaintiff's osteoarthritis. He added that plaintiff's osteoarthritis took years to

develop, and it is quite possible that she realized no symptoms until the vehicle accident caused a flare-up which caused her condition to become symptomatic. Dr. Flores stated "it was that osteoarthritic calcification that was the underlying cause of the flare-up of pain." Dr. Flores then stated that the calcification which showed up in the September 1989 X rays "was unrelated to the auto accident." Dr. Flores, however, agreed with plaintiff's attorney's statement that the bottom line is that plaintiff suffers from the aggravation of a preexisting condition.

Plaintiff testified that three weeks after seeing Dr. Flores the pain returned and she still feels the grinding sensation when she rotates her head to extremes. She claims that, while she can do her job at the Eureka Company, she has to restrict her activities. Plaintiff still has some occasional pain, but the neck exercises help. Plaintiff introduced evidence regarding medical bills and that she missed approximately 2½ days of work.

The trial court refused plaintiff's jury instructions Nos. 21 and 21A regarding the possibility of defendant (1) driving too fast for conditions, (2) failing to obey a traffic control device, and (3) following too closely. The trial court gave Illinois Pattern Jury Instructions, Civil, No. 21.02 (3d ed. 1992) (hereinafter IPI Civil 3d), stating that plaintiff had the burden of proving (1) defendant was negligent, (2) plaintiff was injured, and (3) defendant's negligence was the proximate cause of plaintiff's injury. IPI Civil 3d No. 21.02 instructs the jury as follows:

"If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant." (IPI Civil 3d No. 21.02, at 21—5.)

The jury was also instructed in accordance with IPI Civil 3d No. 36.01: "If you decide for the defendant on the question of liability, you will have no occasion to consider the question of damages." (IPI Civil 3d No. 36.01, at 36—3.) The jury returned a general verdict for defendant and against plaintiff. The trial court subsequently entered judgment in favor of plaintiff on the issue of liability, but then vacated the judgment *n.o.v.* and reinstated the jury verdict in favor of defendant.

A directed verdict or a judgment *n.o.v.* is properly entered in limited cases where all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no

contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14; *Maple v. Gustafson* (1992), 151 Ill. 2d 445, 453, 603 N.E.2d 508, 512.) In contrast, on a motion for a new trial a trial court weighs the evidence and will set aside the verdict and order a new trial if the verdict is " 'contrary to the manifest weight of the evidence.' " (*Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512, quoting *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36.) A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence. (*Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512-13.) Here, plaintiff filed a motion for a new trial or, in the alternative, a judgment *n.o.v.* in her favor. The trial court found the jury verdict "against the manifest weight of the evidence" and entered judgment as to liability in favor of plaintiff. Under *Pedrick* and *Maple* the trial court used the wrong standard in entering a judgment *n.o.v.* Defendant filed a motion to reconsider arguing the jury verdict "was not against the manifest weight of the evidence." The trial court then vacated the judgment *n.o.v.* and reinstated the jury verdict. On appeal, plaintiff asks this court to reinstate the judgment *n.o.v.* in her favor.

Plaintiff cites numerous rear-end collision cases where the jury returned a verdict for defendant which was reversed on appeal. (See *Glaze v. Owens* (1968), 104 Ill. App. 2d 172, 243 N.E.2d 13; *Burroughs v. McGinness* (1978), 63 Ill. App. 3d 664, 380 N.E.2d 37; *Zaeh v. Huenke* (1979), 70 Ill. App. 3d 39, 388 N.E.2d 434; *Hickox v. Erwin* (1981), 101 Ill. App. 3d 585, 428 N.E.2d 520.) In *Glaze* there was no discussion regarding plaintiff's injuries or proximate cause and the court determined that "the record established sufficient negligence on the part of the defendant." (*Glaze*, 104 Ill. App. 2d at 184, 243 N.E.2d at 19.) In *Burroughs* it was stipulated that plaintiff's injury was a result of the collision, and the court found "abundant evidence established the negligence of the defendant." (*Burroughs*, 63 Ill. App. 3d at 668, 380 N.E.2d at 39.) In *Zaeh* the court determined that "defendant was clearly negligent" and, like *Glaze*, did not discuss plaintiff's injuries or proximate cause. (*Zaeh*, 70 Ill. App. 3d at 40, 388 N.E.2d at 435.) In *Hickox*, the court determined "there is abundant evidence to establish defendant's negligence as the proximate cause of plaintiff's injuries." *Hickox*, 101 Ill. App. 3d at 589, 428 N.E.2d at 523.

The jury heard conflicting testimony as to what, if any, injuries plaintiff sustained as a result of the accident in question. At impact,

defendant's car was only going five to six miles per hour; no damage resulted to either car and it did not appear that either party was injured. (See generally *Noel v. Jones* (1988), 177 Ill. App. 3d 773, 779, 532 N.E.2d 1050, 1054.) This evidence, the testimony of the parties, and the depositions of Dr. Kim and Dr. Flores bring into question the extent of plaintiff's injuries and whether they were proximately caused by defendant's negligence. Such testimony distinguishes this case from *Glaze, Burroughs, Zaeh,* and *Hickox,* where there was no issue whether plaintiff was injured or whether defendant's negligence was the proximate cause of any injuries proved by plaintiff. Dr. Flores testified that plaintiff's pain resulted from osteoarthritis which she had developed prior to the accident. He also testified her condition was aggravated by the accident and that she incurred some nerve irritation which would be different from her osteoarthritic condition. However, the jury was not required to accept Dr. Flores' opinion. The credibility issues at trial were significant: the impact was slight, plaintiff continued to work with little problem, and she had an undiagnosed preexisting osteoarthritic calcification in her neck. Dr. Kim testified to subjective symptoms complained of by plaintiff, and stated that plaintiff was referred to him for a "related problem." While Dr. Flores testified to both subjective and objective symptoms, some aspects of his testimony were confusing and apparently in conflict. Finally, the first time Dr. Flores saw plaintiff was more than five months after the accident.

■ The inference that plaintiff did not actually suffer any injury due to defendant's negligence is one which could reasonably be drawn from the testimony. The jury was instructed to determine whether defendant was negligent, whether plaintiff was injured, and whether plaintiff's injuries were proximately caused by defendant's negligence. Significant questions arose at trial regarding these issues. Whom to believe and the weight to be given all of the evidence are matters for the trier of fact, and its decisions should not be disturbed on review unless manifestly erroneous. (*Maple,* 151 Ill. 2d at 460, 603 N.E.2d at 515.) We reject plaintiff's argument that a jury could find against her on damages only by signing the verdict form in her favor, then filling in a zero in the blank for amount of damages. The jury was instructed that if it found defendant's negligence was not the proximate cause of plaintiff's injury then its verdict should be for the defendant. When a jury enters a general verdict for defendant, we do not know on what basis it made its finding. *Maple,* 151 Ill. 2d at 449, 603 N.E.2d at 510.

If the trial court, in the exercise of its discretion, finds that the verdict is against the manifest weight of the evidence, it should grant

a new trial; on the other hand, where there is sufficient evidence to support the verdict of the jury, it is an abuse of discretion for the trial court to grant a motion for a new trial. (*Maple*, 151 Ill. 2d at 456, 603 N.E.2d at 513.) We find no error in the trial court's decision to deny plaintiff's post-trial motion for a new trial.

Nor is there error in the trial court's decision to deny judgment *n.o.v.* and enter judgment on the jury's verdict for defendant. This court is not to weigh the evidence or determine the credibility of witnesses in ruling on a judgment *n.o.v.* (*Maple*, 151 Ill. 2d at 453, 603 N.E.2d at 512.) Viewing the evidence in the light most favorable to defendant, we cannot say that a verdict in favor of defendant could never stand.

■■ Plaintiff also contends the trial court erred in refusing plaintiff's tendered instructions Nos. 21 and 21A. Those instructions allege that defendant (1) drove her vehicle at a speed greater than reasonable under the conditions; (2) failed to obey the traffic control device; and (3) followed plaintiff's vehicle too closely. Plaintiff argues that serious prejudice resulted because of the trial court's refusal of these instructions. The purpose of jury instructions is to provide jurors with correct principles of law applicable to the evidence which has been submitted to them. (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1009, 520 N.E.2d 1085, 1092.) "An instruction is justified if it is supported by some evidence in the record" (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 98, 476 N.E.2d 1378, 1383) and "instructions which are not supported by the evidence need not be given" (*Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, 760, 449 N.E.2d 942, 946). While each party has the right to have the jury instructed on its theory of the case, the trial court has discretion in deciding which issues have been raised by the evidence and which instructions will be read to the jury. (*Ralston*, 132 Ill. App. 3d at 98, 476 N.E.2d at 1383; *Gaskin*, 166 Ill. App. 3d at 1009, 520 N.E.2d at 1092-93.) On review, a new trial will be granted for refusal to give a tendered instruction only where serious prejudice to a party's right to a fair trial has been shown. (*Village of Pawnee v. Azzarelli Construction Co.* (1989), 183 Ill. App. 3d 998, 1023, 539 N.E.2d 895, 910; *Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 200, 549 N.E.2d 1295, 1303.) Plaintiff has not included in the record on appeal any transcript or other report of the jury instruction conference. The reasons for plaintiff's objections to the instructions given are not contained in the record, and neither are the trial court's rulings on the proposed instructions or the objections. From what is before us it appears that the trial court could reasonably have concluded there

was some evidence that defendant was negligent in driving with grease on her shoe, but no evidence that she was speeding, failed to stop for a stop sign, or followed plaintiff's stopped vehicle too closely. Plaintiff has not shown that the trial court abused its discretion in refusing said instructions.

Accordingly, we affirm the judgment of the circuit court of McLean County.

Affirmed.

McCULLOUGH and LUND, JJ., concur.