Nos. 1--94--4064)
 1--94--4065) (Cons.)


THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County. 
 )
 v. ) 
 )
JANICE SIMESTER and DALE SIMESTER, ) Honorable 
 ) Paul J. Nealis,
 Defendants-Appellants. ) Judge Presiding.


 JUSTICE BURKE delivered the opinion of the court:
 After a jury trial, defendants Janice and Dale Simester, who
are married, were each convicted of two counts of criminal neglect
of an elderly person and sentenced to 30 months' probation and
1,000 hours of community service. On appeal, defendants contend
that the statute under which they were prosecuted, 720 ILCS 5/12--
21--a(2) and (3)(West 1992), was unconstitutional, they were not
proven guilty beyond a reasonable doubt and they were denied a fair
trial because inadmissible and prejudicial evidence was presented
by the State. Defendants also contend that the trial court erred
in barring their expert from testifying at trial and in refusing
their proffered jury instructions. For the reasons set forth
below, we affirm.
 At trial, the evidence established that defendant Janice
Simester lived in the same household with her codefendant Dale
Simester, their two young children and the victim, her 74-year-old
uncle Stanley Pierzga, who had lived with her and her parents for
over 20 years. When Janice's parents died, she continued to live
with and care for her uncle in her parents' home.
 Thomas Stotts, a paramedic with the Oak Forest Fire
Department, testified that at 7:58 p.m. on August 10, 1993, he was
called to defendants' home. Janice answered the door and told him
that the victim was upstairs. Stotts immediately noticed a strong
smell coming from the house and, while proceeding upstairs, the
smell became much stronger. He entered the victim's bedroom where
he found him lying on the floor in a fetal position. The victim
and his bedroom were filthy. The victim's clothes, hands, bedding,
floor and television were covered with feces. His clothes were
also urine soaked. After checking the victim's vital signs, Stotts
shook him but was unable to get a response. When he attempted to
roll the victim onto his back, the victim's clothing stuck to the
floor. The victim remained in a rigid fetal position even after he
had been placed on his back. Because Stotts and the other
paramedics who had joined him were becoming ill from the strong
smell, Stotts left the room to retrieve a stretcher to remove the
victim.
 Stotts further testified that because it was police procedure
to respond to all ambulance calls, an Oak Forest police officer
arrived at the scene. In the presence of the officer, Stotts then
asked Janice about the victim. Janice responded that the victim
had simply fallen and needed some help. Eventually, the victim was
placed on a stretcher and taken to the ambulance. However, the
victim's body remained in a retracted, fetal position and his limbs
would not relax even when the paramedics pushed on them. After the
victim's clothes were removed, he was placed on advanced life
support. According to Stotts, the victim appeared very thin,
undernourished and dehydrated, and had wet as well as dried feces
"pretty much all over him." 
 Victoria Barrera, an emergency room nurse at Palos Community
Hospital, testified that shortly after the victim arrived she had
to put on a mask and gown "because the odor was so bad we couldn't
be in there without getting taken back by the fumes." She stated
that the victim was in a fetal position, had bedsores and was
covered with urine and feces. Although the victim was in the
emergency room for approximately four hours, the staff could not
get him completely clean before transferring him to an intensive
care unit.
 Dr. John Massimilian testified that he treated the victim when
he was brought into the emergency room and found him to be totally
covered with dried urine and crusted feces. He described the
victim as being "extremely cachectic," indicative of malnutrition
and dehydration. A urine output test revealed that the victim was
so severely dehydrated as to cause him to be in "profound shock,"
and that he was also suffering from renal failure. An albumen test
indicated that the victim had not had nutritional intake for at
least one week and perhaps much longer. Neurological tests
indicated that the victim was in a deep coma, which took at least
several days to develop and which would have prevented him from
speaking earlier in the day. With respect to the victim's rigid
fetal position, Dr. Massimilian stated that contracture of that
severity generally took at least two weeks to develop. He also
stated that the victim's arms and legs had limitations of motion of
85% and 95%, respectively, and that those percentages had to have
existed for two weeks prior to his admission to the hospital. The
doctor also noted that the victim had a large bedsore on his left
hip, which had penetrated to less than an inch from the bone. He
stated that the bedsore took approximately one week to develop.
 Robert Gayton, a barber, testified in behalf of defendants
that Janice would bring the victim to him for haircuts, that the
victim was grouchy to Janice and that, while cutting the victim's
hair, he noticed a body odor.
 Attorney Edward Grossman testified that he drafted the
victim's will in 1989. At that time, he noticed that the victim
had a body odor, was crotchety and that defendants' house had an
odor.
 Dale's father, Raymond Simester, testified that when he last
saw the victim on July 4, 1993, he was very frail and humped over. 
He stated that he had known the victim for eight years and that the
victim had always had a bad odor about him.
 Mary Lynn Smith, Janice's cousin, testified that the victim
had always kept himself in an unkempt condition and was generally
grumpy. She stated that she had known Janice to be a truthful
person.
 Defendants sought to call Sara Lieber, a licensed social
worker, as an expert witness in geriatric care, and the State
objected. The court stated that it would voir dire Lieber and,
outside the presence of the jury, Lieber testified that she was a
licensed social worker and geriatric care manager, and had a
bachelor's degree in sociology. She stated that she had previously
testified in criminal cases as an expert on the psychological
effects of certain conditions which might have influenced an
individual to commit a crime. She stated that she had testified in
those cases in her capacity as a social worker and that the cases
involved either an insanity defense or that of "battered woman
syndrome." She further testified that she and her firm had been
the court-appointed guardian for at least 50 elderly persons. 
However, when questioned by the court, she admitted that she had no
formal medical training.
 The court then asked counsel what his offer of proof as to
Lieber would be. Counsel responded that Lieber had investigated
the victim's condition by interviewing Janice and reviewing the
police reports and hospital records. Her conclusions were that the
victim had experienced a series of long-term health problems and
that his condition resulted from self-neglect. With respect to his
nutritional deficiencies, Lieber concluded that the victim's
personal preferences and the condition of his teeth prevented him
from consuming certain foods. Lieber also concluded that Janice
had made an effort to care for the victim, but lacked the necessary
specialized knowledge. 
 In denying defendants' motion to call Lieber as an expert
witness, the court stated that she did not even "come close" to
having the qualifications to review medical reports and to render
an opinion with respect to the nutritional and physical condition
of the victim.
 Dale Simester testified that after both of his wife's parents
died, Janice was responsible for the care of her uncle, the victim,
while he, Dale, had no responsibility for his care. He testified
that the victim would not even allow him to come into his room. He
stated that he saw the victim on August 4, 1993, before he left for
a three-day golf outing. He did not see the victim again until the
day of the incident. On that day, Janice told him that the victim
had fallen, and he heard the victim tell her to leave him alone. 
Later in the evening, Janice told him that she checked on the
victim, found that he was having trouble breathing and was going to
call a doctor. Dale admitted that although he knew that the
victim had fallen at approximately 5 p.m., he and his wife left the
house to pick up their children and did not check on him again
until after 7 p.m.
 Janice Simester testified that while her husband was away on
his golf outing, she had no one to help her with her household
duties and, as a result, she did not check on the victim as much as
she should have. She further stated that until the day of the
incident, she believed that the victim was in good health. 
However, after hearing the medical evidence and seeing the
photographs of the victim, she realized that her assessment of his
health was incorrect. She also stated that on the day of the
inicident she went up to the victim's room after she arrived home
from work. When she knocked on the door, the victim was
"hollering." She found that the victim had fallen, but he told her
that he could get up by himself. She noted that the bed sheets
were soiled, so she stripped his bed. After leaving the victim in
order to pick up her children from day care, she returned to find
him still lying on the bedroom floor. She further stated that when
she first observed him on the floor, she did not observe the feces
on his body and clothing.
 The jury subsequently found each defendant guilty of two
counts of criminal neglect, and the trial court sentenced them to
30 months' probation and 1,000 hours of community service. These
appeals followed.
 Defendants contend that the statute under which they were
prosecuted, 720 ILCS 5/12--21--a(2) and (3)(West 1992), is
unconstitutionally vague and violates due process of law by failing
to give a person of ordinary intelligence fair notice that his
contemplated conduct is forbidden. They contend that the statute
is overbroad in that it presumptively imposes medical and
psychiatric knowledge on a lay person for diagnosing and correctly
treating the pre-existing ailments of the elderly or disabled. 
They assert that the statute violates equal protection in that
while it imposes such specialized knowledge on a lay person, it
exempts from criminal liability those caregivers who actually
possess such specialized knowledge and training and who are
licensed to give such specialized care. They also argue that by
making it an offense to fail to give adequate care to the victim on
the basis that one "should reasonably know" the proper care, the
statute "impermissibly adopts a civil negligence standard and
enforces it as a criminal felony." They further maintain that
because the statute prevents a defendant from asserting as a
defense that he reasonably believed that a person [here the victim]
was not an elderly or disabled person, the statute fails to require
culpable intent and, therefore, impermissibly punishes innocent as
well as culpable conduct.
 Section 12--21(a) of the Criminal Code of 1961 provides: 
 "A person commits the offense of criminal
 neglect of an elderly or disabled person when
 he is a caregiver and he knowingly:
 (1) performs acts which cause the elderly
 or disabled person's life to be endangered,
 health to be injured, or pre-existing physical
 or mental condition to deteriorate; or
 (2) fails to perform acts which he knows
 or reasonably should know are necessary to
 maintain or preserve the life or health of the
 elderly or disabled person and such failure
 causes the elderly or disabled person's life
 to be endangered, health to be injured or pre-
 existing physical or mental condition to
 deteriorate; or
 (3) abandons the elderly or disabled
 person." 720 ILCS 5/12--21 (West 1994).
The statute defines "caregiver" as a person who has a duty to
provide for an elderly person's health and personal care at the
person's place of residence, including but not limited to food and
nutrition, shelter, hygiene, prescribed medication and medical care
and treatment. 720 ILCS 5/12--21(b)(3) (West 1994). The statute
provides that the term "caregiver" shall include
 "a parent, spouse, adult child or other
 relative by blood or marriage who resides with
 or resides in the same building with and
 regularly visits the elderly or disabled
 person, knows or reasonably should know of
 such person's physical or mental impairment
 and knows or reasonably should know that such
 person is unable to adequately provide for his
 own health and personal care." 720 ILCS 5/12-
 -21(b)(3)(A) (West 1994).
However, the term "caregiver" specifically excludes health care
providers (and their employees) who are licensed under the Nursing
Home Care Act or the Medical Practice Act. 720 ILCS 5/12--21(b)(3)
(West 1994).
 In reviewing defendants' argument, we find that they have
misapprehended the nature of the statute and what may properly
constitute the basis for a constitutional challenge of such a
statute. Initially, defendants assert that the statute is vague
because its terms are so ill-defined that their meaning "rests upon
the opinions and whims of the trier of fact, rather than upon any
objective criteria or facts." However, after making such a
pronouncement, they fail to direct our attention to any portion of
the statute that they believe fits their assertion of vagueness. 
Next, without any argument or citation to authority, defendants
assert that the statute presumptively imposes medical and
psychiatric knowledge upon them for the purpose of diagnosing and
correctly treating pre-existing ailments of the person in their
care. Apparently defendants are referring to section 12--21(a)(2),
but they ignore the plain language of the statute which mandates
that a caregiver perform acts which he knows or reasonably should
know are necessary to maintain the elderly person's health. Again,
without any type of argument or citation to authority, defendants
assert that because the statute contains the word "reasonably
should know," it "impermissibly adopts a civil negligence standard
and enforces it as a criminal felony." Finally, defendants contend
that because the statute specifically states that a defendant may
not assert as an affirmative defense that he reasonably believed
that a person was not elderly or disabled, the statute fails to
require culpable intent and, therefore, impermissibly punishes
innocent as well as culpable conduct. Defendants fail to advise
this court how precluding an accused from defending himself on the
basis that he did not reasonably believe the victim to be elderly
or disabled must be equated with the concept of whether or not he
reasonably should have known the consequences of his acts or
failure to act.
 It is well settled that a reviewing court is entitled to have
the issues clearly defined with pertinent authority cited and is
not a depository in which an appellant may place the burden of
argument and research. Bank of Ravenswood v. Maiorella, 104 Ill.
App. 3d 1072, 1074 (1982). Any issue which has not been
sufficiently or properly presented to this court for review may be
deemed waived. 155 Ill. 2d R. 341(e). In light of the
insufficiencies of defendants' arguments, we therefore find that
defendants have waived the above stated issues for review.
 Defendants further argue that the statute violates the equal
protection provisions of the federal and State constitutions
because it exempts professionally licensed caregivers. Defendants
claim that they are similarly situated to these professional
caregivers and that excluding such caregivers from the statute is
similar to excluding professional truck and taxicab drivers from
the State's traffic laws. Again, defendants fail to cite to
authority in support of their their assertion that for the purposes
of equal protection they, as lay persons, are similarly situated to
professional caregivers who are licensed in the State of Illinois. 
Moreover, we fail to see how their having once cared for an elderly
person in their home gives them the same status under the law as a
registered nurse or licensed physician. The fourteenth amendment
of the United States Constitution only requires equality between
groups of persons who are similarly situated and does not deny a
State the power to treat dissimilar classes of persons differently. 
People v. Tosch, 114 Ill. 2d 474, 480-81 (1986). Further, State
laws may even differentiate between persons similarly situated if
there is a rational basis for doing so. People v. Blackorby, 146
Ill. 2d 307, 318 (1992). In Illinois, professional caregivers are
already regulated under the Nursing Home Care Act (210 ILCS 45/1--
101 et seq. (West 1992)) and the Medical Practice Act (225 ILCS
60/1 et seq. (West 1992)) and, therefore, there exists a rational
basis for exempting them from a statute regulating the care of the
elderly and disabled by private, nonprofessional individuals. See
Illinois Health Care Association v. Illinois Department of Public
Health, 879 F. 2d 286, 289-90 (7th Cir. 1989). Accordingly, we
find that defendants have not demonstrated that the statute
prohibiting the criminal neglect of an elderly or disabled person
by an individual is unconstitutional.
 Defendants next contend that they were not proven guilty
beyond a reasonable doubt and that, with respect to Dale, the State
failed to establish even the "threshold requirement that he was
properly a caregiver for purposes of the criminal neglect statute." 
Defendants assert that the evidence demonstrated that the victim's
condition resulted from a "sudden precipitous decline rather than
a result of any alleged mistreatment."
 In Illinois, a conviction will not be disturbed upon appeal
unless the evidence is so unreasonable, improbable or
unsatisfactory as to justify a reasonable doubt of a defendant's
guilt. People v. Steidl, 142 Ill.2d 204, 226 (1991). The
standard of review is whether, when viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact
would have found the essential elements of the offense beyond a
reasonable doubt. People v. Hendricks, 137 Ill.2d 31, 63 (1990). 
The credibility of the witnesses, the weight to be given their
testimony and the resolution of any conflicts in the evidence are
the province of the trier of fact (People v. Slim, 127 Ill.2d 302,
307 (1989)), and a reviewing court will not substitute its judgment
for that of the trier of fact (People v. Furby, 138 Ill.2d 434, 455
(1990)). 
 Here, contrary to defendants' assertions, we find that the
evidence overwhelmingly demonstrated that defendants were guilty
beyond a reasonable doubt. The evidence established that the
defendants were the victim's caregivers as contemplated by the
statute. We specifically note that although Dale protests that he
had no responsibilities for the victim's care and thus cannot be
culpable under the statute as a "caregiver," he clearly falls
within the language of the statute defining a caregiver as a
"relative by *** marriage who resides with or resides in the same
building with and regularly visits the elderly or disabiled
person." (Emphasis added.) 720 ILCS 5/12--21(b)(3)(A) (West
1992). Here, the evidence demonstrated that Dale was married to
Janice, the victim's niece, and that all three resided together in
the Simesters' home. Further, the medical evidence established
that the victim had no nutritional intake for at least one week,
that his rigid fetal position took at least two weeks to develop
and that his deep coma had to have existed for several days before
his hospitalization. We find that these facts established that
both Dale and Janice Simester should have reasonably known of the
victim's condition long before the paramedics were summoned.
 Defendants next contend that the trial court abused its
discretion in admitting photographs taken of the victim's room that
were obtained by a warrantless invasion into their home. We
disagree. The testimony of the numerous witnesses who were legally
on the premises because of the 911 request for assistance by
defendants established the same evidence depicted by the
photographs and, therefore, defendants' convictions were not based
entirely on the photographs.
 Defendants further contend that the trial court erred in
admitting into evidence photographs taken of the victim at the
hospital because they "depicted invasive medical procedures and
trauma not inflicted by the defendants." However, the original
photographs are not a part of the record on appeal and, therefore,
we are unable to determine the merits of defendants' argument. We
also briefly note that although there are photocopies of
photographs attached to defendants' motions in limine, they are
undiscernible and we are unable to determine which of them may be
the basis for defendants' appeals.
 Defendants next contend that the trial court erred in
precluding their "geriatric care expert" from testifying that the
victim's condition resulted from self-neglect and that Janice had
made good faith efforts to render care.
 A trial court's determination of whether a witness has been
properly qualified as an expert will not be overturned upon appeal
unless it was an abuse of discretion. People v. Free, 94 Ill. 2d
378, 410 (1983). An individual will be permitted to testify as an
expert if his experience and qualifications afford him knowledge
which is not common to lay persons and where such testimony will
assist the trier of fact in reaching a conclusion. People v.
Jordan, 103 Ill. 2d 192, 208 (1984). 
 Here, the proposed expert witness, Sara Lieber, admitted that
she had no medical training. Based on her testimony, the trial
court determined that she did not possess the qualifications with
which to review medical reports and to render an opinion regarding
the nutritional and physical condition of the victim. Further,
Lieber's proposed testimony did not concern matters beyond the
competence of the average juror. More specifically, whether
defendants' conduct was criminal neglect or a good faith attempt to
care for the victim was not a matter so difficult to comprehend or
explain that an expert witness was necessary. See e.g., People v.
Brown, 100 Ill. App. 3d 57, 72 (1981).
 Defendants further argue that the trial court erred in
refusing to give their tendered jury instructions which defined
knowledge, intent and mistake of fact.
 In People v. Powell, 159 Ill. App. 3d 1005, 1013 (1987), the
court held that ordinarily, a jury need not be instructed on the
terms "knowingly" and "intentionally" because the terms have a
plain meaning within the jury's common knowledge. If a jury raises
a specific question on a point of law arising from facts about
which there is doubt or confusion, the court should attempt to
clarify the issue in the minds of the jurors. People v. Doe, 175
Ill. App. 3d 371, 376 (1988). In the present case, the trial court
stated that it would give the instructions only if the jury
specifically requested that the terms be defined. Because no
request was ever made, we find that the trial court did not err in
withholding the instructions.
 We also briefly observe that defendants' reliance on People v.
Brouder, 168 Ill. App. 3d 938, 947-48 (1988), for the proposition
that the trial court was required to give their instruction
defining "intent" and "knowingly" to the jury, is misplaced. In
Brouder, the court specifically distinguished those cases in which
the jury asked to have "knowingly" defined from the cases where the
jury made no such request. Because Brouder involved a jury which
asked for the definition during deliberation, it is inapplicable to
the case at bar.
 Defendants lastly argue that the trial court erred in refusing
their jury instruction defining "mistake of fact," asserting that
Janice "presented a variety of evidence that she was mistaken as to
the true physical and mental condition" of the victim. 
 The determination of which instructions shall be given to a
jury lies within the discretion of the trial court and will not be
overturned upon review absent an abuse of that discretion. Martin
v. Chicago Housing Authority, 264 Ill. App. 3d 1063, 1083 (1994). 
The purpose of jury instructions is to provide jurors with correct
principles of law which apply to the evidence which has been
submitted to them. Gaines v. Townsend, 244 Ill. App. 3d 569, 576
(1993). Where the instructions are not supported by either the
evidence or the law, the instructions should not be given to the
jury. Levenson v. Lake-To-Lake Dairy Co-op., 76 Ill. App. 3d 526,
536 (1979).
 Here, the statute specifically precludes as a defense the
defendant's mistake of fact as to whether the victim was disabled,
i.e.:
 "It shall not be a defense to criminal neglect
 of an elderly person that the accused
 reasonably believed that the victim was not an
 elderly or disabled person." 720 ILCS 5/12--
 21(f)(West 1992).
Therefore, Janice's assertion that she did not know the true nature
of the victim's physical or mental condition (i.e., that he was
disabled), was not a proper defense in this case. Further, in
light of the overwhelming evidence regarding the victim's extremely
debilitated condition, we find that there was no evidence to
support a "mistake of fact" instruction and, accordingly, the trial
court did not abuse its discretion in failing to give such an
instruction.
 For the reasons stated, the judgments of the circuit court of
Cook County are affirmed.
 Affirmed.
 WOLFSON, P.J., and CERDA, J., concur.